Warren Postman (#330869)
  wdp@kellerlenkner.com
Keller Lenkner LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
  (202) 749-8334

Sean Duddy (*pro hac vice forthcoming*)
  skd@kellerlenkner.com
Keller Lenkner LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AALIYAH JOLLY, et al., | Case No.   5:20-cv-04728 |
| Petitioners, | **PETITION FOR ORDER COMPELLING ARBITRATION** |
| vs. | |
| INTUIT INC., | |
| Respondent. | |

Petitioners submit the following petition for an order compelling Respondent Intuit Inc. to arbitrate Petitioners' claims against Intuit, in accordance with the terms of Intuit's arbitration agreement.

## NATURE OF THE PETITION

1.  Petitioners are 5,428 Intuit customers who are attempting to individually arbitrate state consumer fraud and federal antitrust claims against Intuit, arising from their use of Intuit's online tax filing product, TurboTax.

2.  Before using TurboTax's online tax filing services, each Intuit customer must click a button acknowledging that he or she accepts Intuit's Terms of Service. Those Terms include an arbitration agreement.

3.  Each Petitioner paid TurboTax to prepare and file his or her taxes in at least one year between tax years 2014 and 2018, and therefore each Petitioner clicked through Intuit's Terms of Service. Invoking the Terms, each Petitioner filed a demand for arbitration with AAA against Intuit, seeking to arbitrate the Petitioner's consumer fraud and antitrust claims.

4.  The Terms require that each Petitioner's claims be resolved in individual arbitration administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. The Consumer Rules state that before an individual arbitrator has been appointed to a particular case, or where a AAA rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." Consumer Rule 53.[1] The rules also include a delegation clause, which states that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Consumer Rule 14(a).

5.  Thus, the parties' agreement requires that disputes about the arbitrability of Petitioners' claims, including disputes about the proper interpretation of the arbitration agreement and the AAA rules the agreement incorporates, must be resolved in arbitration.

6.  AAA applied its rules and determined that each Petitioner's demand for arbitration

---

[1] Available at https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf.

met the filing requirements to proceed with arbitration.

7. In response to AAA's determination, Intuit objected to the merits and form of Petitioners' demands, AAA's ability to handle Petitioners' arbitrations, and Intuit's arbitration fee obligations, and it argued that under the terms of the arbitration agreement and AAA's rules it may elect to force Petitioners' demands out of arbitration and into small-claims court.

8. AAA rejected each of Intuit's objections, determining that they raise questions of arbitrability that must be resolved by the individual arbitrator assigned to each Petitioner's arbitration.

9. Rather than accepting AAA's determinations and proceeding with Petitioners' arbitrations, Intuit sued Petitioners—its own customers—in California state court, seeking: (i) a declaration and injunction that Petitioners may *not* proceed in arbitration and *must* proceed in court, and (ii) a declaration that Petitioners seek "de facto" class or representative arbitration barred by the agreement. Intuit also seeks a declaration that California Senate Bill 707, which imposes sanctions on a "drafting party" that fails to pay the fees necessary for arbitration to proceed under a consumer arbitration agreement, is preempted by the Federal Arbitration Act ("FAA"). Intuit only has standing to seek such a declaration if it plans to refuse to pay the fees necessary to proceed with Petitioners' arbitrations.

10. Intuit has used its lawsuit to extract from AAA a 30-day stay of Petitioners' arbitrations, and it has asked AAA for an additional two-month stay.

11. Petitioners request that this court order Intuit to abide by the arbitration agreement it drafted, as required by the FAA, 9 U.S.C. § 4.

## PARTIES

12. Each Petitioner's name, city, and state are listed on Exhibit A.

13. Defendant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because each Petitioner's underlying controversy involves claims arising under

federal law—the Sherman Act, 15 U.S.C. §1 et seq.

15. This Court has personal jurisdiction over Intuit because Intuit's principal place of business is within this district, and Intuit has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

16. Venue is proper in this district pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1391(b) because Intuit's principal place of business is in this district, and thus a substantial part of the conduct at issue in this case originated in this district.

**INTRADISTRICT ASSIGNMENT**

17. A substantial part of the events and omissions that gave rise to Petitioners' claims occurred in Santa Clara County, which is served by the San Jose Division.

**BACKGROUND**

18. Petitioners paid to file their taxes using TurboTax Online, an Intuit product, in at least one year between tax years 2014 and 2018.

19. When Petitioners filed their taxes using TurboTax Online, they were eligible for free tax filing services through the IRS's Free File Program. Intuit and a consortium of other private tax preparation companies had agreed to give Petitioners and other U.S. taxpayers access to the IRS's program, in return for the IRS agreeing to not develop its own tax filing software to compete with the private companies. However, Intuit failed to adequately disclose the IRS's Free File Program to Petitioners or provide a path for them to utilize the program.

20. Instead, Intuit steered Petitioners to its own "Free Edition" tax filing program which, despite its title, required Petitioners to pay fees that they would not have paid under the IRS's program. Intuit heavily marketed its own "free" program and promoted it as free to Petitioners and other consumers, ensuring that internet searches for "free" tax filing services prioritized TurboTax's "Free Edition," rather than TurboTax's version of the IRS's Free File Program. Intuit's scheme was designed to, and did, convince Petitioners and Intuit's other customers that the only available free filing option was Intuit's own "free" program, for which very few consumers were eligible.

21. Even after a Petitioner using a TurboTax commercial product provided enough

1  information for Intuit to determine that the Petitioner was eligible for the IRS's Free File Program, Intuit did not inform that Petitioner of his or her eligibility for the Free File Program, nor did it direct the Petitioner to TurboTax's version of the Free File Program.

22.  Intuit also actively concealed the existence of the Free File Program from Petitioners. For instance, Intuit added code to TurboTax's website that directed Google and other search engines to not list TurboTax's version of the Free File Program in search results. Intuit also omitted all references to the Free File Program from TurboTax's commercial website.

23.  Intuit's conduct was illegally anticompetitive. Through its deception, Intuit preserved its dominant market position by preventing a formidable potential competitor—the United States government—from entering the market for online tax preparation and filing services. And Intuit colluded with the other members of the taxing filing consortium to steer taxpayers away from free filing products and to the members' respective paid products, thereby preserving their profits.

24.  Petitioners were harmed by Intuit's deceptive and anticompetitive conduct because Intuit's misrepresentations and material omissions caused Petitioners to pay for tax filing services that they otherwise would have received for free.

25.  Petitioners seek relief for those practices under dozens of state consumer protection laws targeting unfair and deceptive acts and practices, and under the federal Sherman Act, 15 U.S.C. §§ 1, 2, which prohibits Intuit's anticompetitive conduct.

26.  Before using TurboTax's tax filing services, each Petitioner was required to click a button acknowledging that he or she accepted an arbitration agreement, attached as Exhibit B.[2]

27.  The arbitration agreement provides that "[a]ny dispute or claim relating in any way to the services or this agreement will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify." Ex. B § 14. The agreement further states that the arbitration shall be administered by AAA, in accordance with AAA's Consumer Arbitration Rules. *See id.*

---

[2] The agreements governing Petitioners' claims were materially similar across all relevant tax years. For convenience, Petitioners will cite and quote the agreement applicable to tax year 2018.

28. AAA's Consumer Rules dictate that before an individual arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." Consumer Rule 53.[3] The rules also include a delegation clause, which states that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Consumer Rule 14(a).

29. On October 1, 2019 and February 22, 2020, each Petitioner filed a demand for arbitration with AAA against Intuit, invoking Intuit's arbitration agreement and seeking to arbitrate the claims at issue in this action.[4] Each demand was submitted on AAA's official form, contained each Petitioner's individual information, described each Petitioner's individual claims, and requested individual relief. An example of one Petitioner's demand is attached as Exhibit C.

30. AAA reviewed the arbitration agreement, applied its rules, and determined that each Petitioner's demand for arbitration met the filing requirements to proceed with arbitration.

31. Intuit did not dispute that each Petitioner could invoke the arbitration agreement in asserting his or her claims. But rather than proceed with Petitioners' arbitrations, Intuit waged a months-long campaign to avoid arbitration. It objected to the merits of Petitioners' claims, the form of Petitioners' demands, the method by which Petitioners filed their demands, AAA's ability to neutrally administer the arbitrations, and the amount of fees Intuit is required to pay under the terms of its agreement. Intuit also repeatedly argued that under the terms of the arbitration agreement and AAA's rules, it may elect to force Petitioners' demands out of arbitration and into small-claims court.

32. AAA rejected each of Intuit's arguments, determining that the arguments must be decided by individual arbitrators. AAA began initiating each Petitioner's individual arbitration, the first step towards assigning individual arbitrators.

33. Rather than accepting AAA's determinations and proceeding with Petitioners'

---

[3] Available at https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf.

[4] Petitioners initially asserted only consumer fraud claims. On July 15, 2020, Petitioners amended their arbitration demands to add federal antitrust claims under the Sherman Act, 15 U.S.C. §§ 1, 2.

arbitrations, Intuit sued Petitioners in California state court, seeking declaratory relief on questions that Intuit's agreement says only an arbitrator may answer.  Intuit's lawsuit seeks: (i) a declaration and injunction that under the terms of the arbitration agreement and AAA's rules, Petitioners may not proceed in arbitration and must proceed in court, and (ii) a declaration that Petitioners seek "de facto" class or representative arbitration barred by the agreement.  Intuit also seeks a declaration that California Senate Bill 707, which imposes sanctions on a "drafting party" that fails to pay the fees necessary for arbitration to proceed under a consumer arbitration agreement, is preempted by the Federal Arbitration Act ("FAA").  Intuit only has standing to seek such a declaration if it plans to refuse to pay the fees necessary to proceed with Petitioners' arbitrations.  Intuit's complaint is attached as Exhibit D.

34.     Intuit used this lawsuit to extract from AAA a 30-day stay of Petitioners' arbitrations, invoking AAA Consumer Rule 1(f).  Intuit has asked AAA for an additional two-month stay.  And it has asked the state court to hold that Petitioners can never pursue their claims in arbitration, and must instead pursue their claims in court.

## **CONCLUSION**

35.     Each Petitioner and Intuit entered into an agreement requiring them to individually arbitrate the Petitioner's consumer fraud and antitrust claims.

36.     Intuit has breached that agreement and has "fail[ed], neglect[ed], or refus[ed]" to arbitrate under the agreement, 9 U.S.C. § 4, by refusing to comply with AAA's administrative determinations, by seeking to prevent Petitioners from proceeding with arbitration, and by asking a court to resolve disputes that the agreement requires must be decided by individual arbitrators.

37.     Accordingly, this Court should compel Intuit to individually arbitrate each Petitioner's claims in accordance with the parties' arbitration agreement, as required by the FAA, 9 U.S.C. § 4.

# PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that this Court:

38. Order that Intuit must arbitrate each Petitioner's claims in accordance with Intuit's arbitration agreement, making clear that Intuit must raise any arbitrability arguments—including its argument that the agreement allows it to unilaterally elect to litigate Petitioners' claims in small claims court rather than in arbitration—before individual arbitrators, and must therefore comply with AAA's administrative determinations so that individual arbitrators may be appointed.

Dated: July 15, 2020

Respectfully submitted,

/s/ Warren Postman
Warren Postman (#330869)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Sean Duddy (*pro hac vice forthcoming*)
 skd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**CERTIFICATE OF SERVICE**

I certify that I shall cause the foregoing document to be served by courier on Intuit, Inc. at its registered agent for service of process, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833, on or around July 15, 2020.

Dated: July 15, 2020                          /s/ Warren Postman