# REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# Exhibit A

# Exhibit A.1



**AMENDED DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

| | |
|---|---|
| 1. Which party is sending in the filing documents? *(check one)* ☒ Consumer   ☐ Business | |
| 2. Briefly explain the dispute: <br><br> Claimant used TurboTax (owned by Intuit, Inc.) to file taxes online and is bringing consumer fraud and antitrust claims against Intuit as detailed in the attached statement. <br><br> Intuit required Claimant to accept an arbitration agreement as a condition of filing taxes using TurboTax's online tax filing products. Intuit did not provide Claimant a copy of Claimant's signed arbitration agreement. The terms of Intuit's arbitration agreement were materially identical for tax years 2014 through 2018. The Intuit arbitration agreement for tax year 2018 is available here, https://kl.link/2CvmLZB, and was served along with this amended demand on Intuit and AAA. | |
| 3. Specify the amount of money in dispute: $1150. Claimant reserves the right to amend the amount in controversy following discovery. | |
| 4. State any other relief you are seeking: <br><br> ☒ Attorney Fees  ☒ Interest  ☒ Arbitration Costs  ☒ Other; explain: punitive damages and injunctive relief | |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held: <br><br> The parties' agreement provides that Claimant "may choose to have the arbitration conducted by telephone, based on written submissions, or in person." *See* § 14. Claimant elects to conduct the arbitration based on written submissions. | |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. | |

**Consumer:**

Name: AALIYAH JOLLY (KL Tracking No. a0E1U000006tuel)

Address: ███████████

| City: METROPOLIS | State: IL | Zip Code: 62960 |
|---|---|---|
| Telephone: ███████ | Fax: | |

Email Address ███████████████

**Consumer's Representative:**

Name: Warren Postman

Firm: Keller Lenkner LLC

Address: 1300 I Street N.W., Suite 400E

| City: Washington | State: D.C. | Zip Code: 20005 |
|---|---|---|
| Telephone: (202) 741-8334 | Fax: | |

Email Address: wdp@kellerlenkner.com

**Business:**

Name: TurboTax, Intuit Inc.

Address: 2700 Coast Avenue

| City: Mountain View | State: California | Zip Code: 94043 |
|---|---|---|
| Telephone: (650) 944-6000 | Fax and Email Address: Unknown to Claimant | |

**American Arbitration Association®**

**AMENDED DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

| **Business's Representative:** | | |
|---|---|---|
| Name: Rodger Cole | | |
| Firm: Fenwick & West LLP | | |
| Address: 801 California Street | | |
| City: Mountain View | State: CA | Zip Code: 94041 |
| Telephone: (650) 335-7603 | Fax: | |
| Email Address: rcole@fenwick.com | | |
| Date: July 15, 2020 | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

**AMERICAN ARBITRATION ASSOCIATION®**

**AMENDED DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

**Statement of Claim**

TurboTax is the nation's leading provider of online tax preparation and filing services.[1]  It occupies as much as two-thirds of the online tax filing market, and it generated over $2.2 billion in revenue in fiscal year 2019.  But that success did not result purely from a superior product or business strategy.  Rather, TurboTax acquired and maintained its dominant position through a "free to fee" scheme, falsely promising low-income taxpayers free tax filing, and then deceiving them into buying its paid products.  TurboTax also profited by boxing out a significant potential competitor, the United States Internal Revenue Service, from the market for online tax preparation and filing services.  Both schemes were illegal.

TurboTax is a member of the Free File Alliance (now called Free File, Inc.), a consortium of private tax preparation and filing companies.  In 2002, the Alliance promised to provide free online tax filing to low-income taxpayers—at least 60% of the population—and in return extracted the IRS's agreement not to provide competing online tax filing services.  The Free File Alliance memorialized this arrangement in the Free File Agreement (the "Agreement"), which remains in force today.  The Agreement includes a non-compete provision that prohibits the IRS from creating its own free online filing product and entering the market for tax preparation.

Under the Agreement, each Free File Alliance member must serve a share of the total eligible population, so that all qualifying taxpayers have access to at least one member's free filing platform.  For its part, TurboTax created free tax preparation and filing software that gave consumers free access to more than 100 tax forms, allowing eligible consumers to file even complex returns electronically for no charge, so long as they met one of three criteria: an adjusted gross income ("AGI") of around $34,000 or less; eligibility for the Earned Income Tax Credit; or status as an active military member with an AGI of around $66,000 or less.  Taxpayers who qualified for this free option could also prepare and file their state tax returns for free, using the same website.

While TurboTax created free filing software to satisfy its commitments under the Agreement, it did not truly offer that software to its customers.  Instead, TurboTax leveraged its participation in the Free File Alliance to entice low-income earners, like Claimant, with the promise of free tax preparation, only to trick them into paying for TurboTax's commercial tax filing products.  In other words, TurboTax used the prospect of free filing as bait to lure

---

[1] Respondent Intuit, Inc. owns TurboTax.

1

consumers to pay it money.

Intuit implemented this scheme by first muddying the waters, introducing a decoy "free" product, separate from the Free File Alliance program, that few people were qualified to use. Specifically, TurboTax called the Free File Alliance program the "Freedom Edition." TurboTax then called its decoy "free" filing product the "Free Edition." The "Freedom Edition" (the IRS-required free option) and the "Free Edition" (the decoy "free" option) were both nominally free, but the Free Edition's eligibility requirements were significantly more narrow than the Freedom Edition's eligibility requirements. The Free Edition was free for only truly simple tax returns. Consumers could not file for free using the Free Edition if they were self-employed; lacked health insurance; received unemployment; had business income, expenses, or losses; claimed a student loan deduction; had capital gains or losses; lived in one state but worked in another; paid or received alimony; had income from rental real estate; received royalties; had farm income or losses; or claimed a health savings account contribution deduction, deductible educator expenses, education credits, retirement savings contribution credits, or credits for child and dependent care expenses. On the other hand, consumers with these tax situations would still be eligible for the Freedom Edition, so long as they had met the basic eligibility requirements.

If this is confusing, that is by design. Having created a decoy "Free Edition" that few consumers could use, TurboTax drowned out any thought of the "Freedom Edition" by dialing up its promotion of the "Free Edition." For instance, for tax year 2018, TurboTax issued a thirty-second television advertisement depicting a game show in which the answer to every question was "free."[2] The advertisement ended with a voiceover stating, "That's right, TurboTax Free is free. Free, free, free, free." TurboTax also used direct email campaigns urging consumers to sign into their TurboTax accounts to receive a "max refund" that was "FREE guaranteed," but directing them to TurboTax's commercial site, not the Freedom Edition free site. TurboTax paid for Google "AdWords"—advertisements that appear above Google search results—to direct taxpayers to its Free Edition commercial site when they searched for free tax filing. And once on TurboTax's commercial site, consumers were inundated with offers of "free" filing.[3]

---

[2] Available at https://www.youtube.com/watch?v=c7jhZR_umi8.

[3] See https://kl.link/322LfnU (archived version of commercial site on June 1, 2015); https://kl.link/3iMmMcf (archived version of commercial site on Jan. 14, 2016); https://kl.link/3fgah6u (archived version of commercial site on Feb. 15, 2017); https://kl.link/2CiwB0P (archived version of commercial site on Jan. 18, 2018); https://kl.link/31ZULrH

American Arbitration Association®

**AMENDED DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

TurboTax aggressively advertised its Free Edition in this manner for tax years 2014, 2015, 2016, 2017, and 2018, to convey to taxpayers that its Free Edition was <u>the</u> free filing option.

Not only did TurboTax aggressively market its restrictive Free Edition, it also actively concealed its Freedom Edition, for which many more taxpayers were eligible. For instance, TurboTax "de-indexed" the Freedom Edition website, adding code directing search engines to not list the website in online search results. As a result, consumers searching for free tax filing, even specifically for "IRS free tax filing," would be directed to TurboTax's Free Edition commercial site rather than the Freedom Edition site. And even if a consumer managed to locate TurboTax's Freedom Edition through an internet search, that consumer was first directed to a landing page containing a button advertising "free" filing on TurboTax's commercial website.[4] TurboTax also omitted all references to the Freedom Edition website from its commercial website, and it removed all links from the commercial website to the Freedom Edition website.

Once on TurboTax's commercial website, consumers were presented only with TurboTax's "Free Edition" and TurboTax's paid products. They were never made aware of the Freedom Edition, and were shown a menu of options that would cause any reasonable consumer to conclude that the Free Edition was the only free option available. Because the "Free Edition" is so restrictive, many taxpayers who qualified for the Freedom Edition ended up on TurboTax's commercial website and were led to believe that their only option was a TurboTax paid product.

---

(archived version of commercial site on Jan. 31, 2019).

[4] *See* TurboTax Freedom Edition and IRS Free File Alliance (Mar. 18, 2014) (describing the IRS Free File Program, and then providing a "Start For Free" button directing the reader to TurboTax's commercial website) available at https://kl.link/38LBBax.

3

|  | Wages & Income | Deductions & Credits | Health Insurance | Other Tax Situations | Federal Review |

To accurately report this income, you'll need to upgrade

| BENEFITS | Free Edition | Deluxe | Self-Employed |
|---|---|---|---|
| Report W-2 income | ● | ● | ● |
| Report multiple sources of income—includes 1099-MISC, 1099-K, and more. |  | ● | ● |
| One-on-one help—get customized answers to your product and support questions from a TurboTax specialist. |  | 🎧 | 🎧 |
| Maximize deductions—claim self-employed expenses such as vehicle, phone, supplies, and more (Schedule C). |  |  | ● |
|  | Keep Free $0 | Upgrade $59.99 State additional | Upgrade $119.99 State additional Pays for itself |

In short, TurboTax aggressively advertised "free" filing through its commercial website and a product designed to appear identical to the truly free product, while actively concealing the truly free product, intending that taxpayers would be drawn to TurboTax for "free" filing, but then would be unlikely to find the actual free filing product and would instead purchase TurboTax's paid products. This process was no accident. As explained in an exposé last year by ProPublica, internal whistleblowers have confirmed that Intuit carefully designed TurboTax's advertising and website for the *specific purpose* of causing consumers to think they had to pay Intuit money for something Intuit had promised to provide for free:

> Steering customers away from TurboTax's truly free option [wa]s a "purposeful strategy," said a former midlevel Intuit employee. For people who find TurboTax through a search engine or an online ad, "the landing page would direct you through a product flow that the company wanted to ensure would not make you aware of Free File."
> . . .
> "The entire strategy is make sure people read the word 'free' and click our site and never use" an actually free product, the former midlevel employee said. In reality, TurboTax's Free Edition guides many people to a product that costs them money. It's only free for people with the simplest tax situations. The "vast majority of people who click that will not pay $0," the former employee said.
> . . .
> One former marketing employee recalled a May 2017 meeting of a marketing team at TurboTax's San Diego headquarters. The tax filing season had just ended, and a dozen or so staffers up to the senior manager level were brainstorming. A new employee proposed that customers going through TurboTax's interview-style filing process who were found to be eligible for Free File get a "hard recommendation" — essentially a pop-up window — to be routed to the truly free product.
>
> The response? Laughter, according to the former employee. The meeting quickly moved on.

"They have ways of detecting if you're paying too much, but they just don't do it," the former staffer said.
. . .

Dozens of taxpayers have contacted ProPublica to tell their stories of being charged by TurboTax despite the fact that they earned under $34,000 a year, qualifying them for TurboTax's Free File product. An 87-year-old retiree with a gross income of $11,000, for example, was charged $124.98 to file with TurboTax.

On LinkedIn, Heather Samarin, who was a TurboTax vice president of product management a decade ago, said that she had been "charged with addressing the threat posed by IRS free efile program" and had "revamped TurboTax marketing strategy for low-end tax filers," driving a "100% increase in revenues." She did not respond to requests for comment.
. . .

Last summer, according to a former marketing employee, the then-head of TurboTax, Dan Wernikoff, attended a meeting about customers who had unnecessarily selected costlier products like TurboTax Deluxe. These customers had tax situations that qualified them for a cheaper or even free product, and the slides shown at the meeting referred to them as having been "overcharged." According to the former employee, Wernikoff instructed that going forward, employees should never use the word "overcharged." Instead, they should say that these customers' use of products intended for higher-earning customers was "aspirational." Wernikoff didn't respond to a request for comment.

See Justin Elliott & Paul Kiel, *The TurboTax Trap: TurboTax and H&R Block Saw Free Tax Filing as a Threat — and Gutted It*, ProPublica (May 2, 2019) *available at* https://kl.link/3fibSsO.

Claimant AALIYAH JOLLY was eligible for free filing through TurboTax's IRS-required Free File product. But despite being eligible for free tax filing, Claimant paid TurboTax to file taxes. Claimant paid TurboTax because Claimant was drawn by the prospect of "free" tax filing through TurboTax's commercial website, but TurboTax implicitly represented that its Free Edition, rather than the truly free Freedom Edition, was the only free filing product available. Because Claimant was ineligible for the Free Edition, TurboTax represented that Claimant would have to file Claimant's taxes using a paid TurboTax product, which Claimant did. Even after Claimant provided sufficient information to allow TurboTax to determine that Claimant was eligible for the Free File program, TurboTax did not make Claimant aware of that program or direct Claimant to the Free File website. And TurboTax made it impossible for Claimant to access the truly free, Free File website from its commercial website. Had Claimant known of the truly free option (TurboTax's Free File Program), Claimant would not have paid TurboTax to file Claimant's taxes. Accordingly, TurboTax knowingly, intentionally, and willfully misled Claimant, causing Claimant to pay for services that Claimant would otherwise have not paid for. TurboTax's fraud was particularly egregious because it was part of

a willful pattern in which the company repeatedly took advantage of millions of low-income taxpayers like Claimant, in violation of the commitment TurboTax made to the IRS to prevent the IRS from offering its own, competing product. TurboTax's conduct constitutes fraud and unjust enrichment at common law. Its conduct also constitutes unfair, unconscionable, deceptive, and fraudulent business practices, in violation of 815 Ill. Comp. Stat. 505/2 et seq.

Intuit's conduct also violates the Sherman Act, which makes illegal certain types of anticompetitive conduct.[5] While businesses may lawfully act to expand their market share and increase profits, they cannot pursue or maintain a monopoly by unfairly harming the competitive process.[6] Thus a company like TurboTax, with monopoly power, cannot engage in deceptive or unlawful conduct to avoid competition.[7] And it cannot collude with competitors to increase prices.[8] Under either theory, the ultimate question is whether the anticompetitive conduct harmed consumers. TurboTax's scheme impeded competition and harmed consumers in two ways.

First, TurboTax deceived a formidable potential competitor, the United States government, from entering the market for online tax preparation and filing services. TurboTax has conceded that it "face[s] competitive challenges from government entities that offer publicly funded electronic tax preparation and filing services with no fees to individual taxpayers."[9] To combat that threat, TurboTax—through the Free File Alliance—promised to offer free tax filing to at least 60% of United States taxpayers, in return for the IRS's agreement to not offer its own free product.

---

[5] *See* 15 U.S.C. §§ 1, 2.

[6] *See id.*

[7] *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 303 (3d Cir. 2007) (reversing dismissal of a Sherman Act claim based on deception of a standard-setting organization); *United States v. Microsoft Corp.*, 253 F.3d 34, 76–77 (D.C. Cir. 2001) (finding a Sherman Act violation where Microsoft deceived software developers into developing software that would only work with Microsoft's operating system); *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 396–97 (3d Cir. 2000) (reversing dismissal of a Sherman Act claim based in part on a deceptive marketing campaign disparaging a competitor); *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 914–17 (2d Cir. 1988) (reversing dismissal of a Sherman Act claim based on letters sent to pharmacists disparaging a rival drug company); *Int'l Travel Arrangers, Inc. v. W. Airlines, Inc.*, 623 F.2d 1255, 1257–58 (8th Cir. 1980) (affirming a finding of Sherman Act violations based on a deceptive advertising campaign).

[8] *See, e.g., Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (holding that collusion is illegal when market participants made a "conscious commitment to a common scheme designed to achieve an unlawful objective"); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 426–33 (4th Cir. 2015); *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 47–51 (1st Cir. 2013) (reversing dismissal of a Sherman Act claim when the plaintiff alleged "facts concerning when agreement occurred" and conduct by the market participants "which is difficult to explain outside the context of a conspiracy").

[9] *See* Intuit Inc., Fiscal Year 2018 Form 10-K at 9, available at https://kl.link/2W2iRhM.

With the non-compete agreement in place, TurboTax implemented the deceptive bait-and-switch scheme described above.  TurboTax hurt consumers by depriving them of a truly widely available free-file option, and instead steering them into TurboTax's paid options.  And TurboTax maintained its significant market power by shielding its paid products from competition from a free or far less expensive option.

Second, TurboTax colluded with the other members of the Free File Alliance to conceal the Free File program from the entire market, and thus to reduce competition.  Instead of competing for Free-File taxpayers to promote their brands and to retain those consumers as fee-generating customers once their incomes outgrew the Free File Program, the members of the Alliance coordinated to suppress competition.  They not only collectively extracted a non-compete agreement from the IRS, but they also collectively concealed the Free File product it had promised to provide, to maximize the number of consumers who paid for tax filing services.  TurboTax's scheme, while egregious, was mirrored by H&R Block and others; and while other members of the Free File Alliance should have competed for the free-filing taxpayers who fell for TurboTax's scheme (*i.e.*, potential brand ambassadors and future fee-paying customers), the Alliance members all colluded to hide the Free File program and to steer the taxpayers into their respective paid products.[10]  By collectively suppressing the number of free-filers, the Alliance members all profited from the fees they received from those would-be-free-filers.  And their collusion was wildly successful: In 2019, only 2.4% of taxpayers eligible for the Free File program filed taxes using the program, and the Department of Treasury estimates that more than 14 million taxpayers who were eligible for the Free File program paid to use an Alliance member's commercial product instead.[11]

TurboTax's anticompetitive conduct violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  *See also* 15 U.S.C. § 15.

---

[10] *See* Justin Elliott & Paul Kiel, *The TurboTax Trap: TurboTax and H&R Block Saw Free Tax Filing as a Threat — and Gutted It*, ProPublica (May 2, 2019) available at https://kl.link/3fibSsO.

[11] *See* Treasury Inspector General for Tax Administration, *Complexity and Insufficient Oversight of the Free File Program Result in Low Taxpayer Participation* at 5 (Feb. 20, 2020) available at https://kl.link/2ZffCFL.

7

# Exhibit A.2

> This declaration is an important document that will allow us to establish that we represent you in bringing claims against TurboTax. Please read carefully to confirm that the following is correct and then initial and sign to confirm that you affirm these facts under penalty of perjury.

# Witness Statement of Aaliyah Jolly

I, Aaliyah Jolly, provide the following witness statement:

1. I am over 18 years of age.

2. I have personal knowledge of the facts in this witness statement. And my testimony on examination under oath about these facts would be the same as this witness statement.

3. I currently reside at:

   Street: ▮▮▮▮▮▮▮▮▮▮

   City: Metropolis    State: Illinois    Zip: 62960

4. I have retained Keller Lenkner LLC to pursue claims against TurboTax on my behalf.

5. I authorize TurboTax to discuss my relevant tax return information with Keller Lenkner LLC in connection with my claims against TurboTax.

6. I paid TurboTax to file my taxes online.

7. At the time I paid TurboTax to file my taxes, I did not believe I was eligible to file my taxes online through TurboTax for free.

8. If I had known that I was eligible to file my taxes online through TurboTax for free, I would not have paid TurboTax to file my taxes.

I affirm that these facts are true under penalty of perjury under the laws of the United States.

Date: 12/14/2019    Signature: *Aaliyah Jolly* (DocuSigned by: 718F0F11220542D...)