Warren Postman (#330869)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
  (202) 749-8334

Sean Duddy (*pro hac vice forthcoming*)
  skd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AALIYAH JOLLY, et al.,<br><br>　　　　　*Petitioners,*<br><br>　　vs.<br><br>INTUIT INC.<br><br>　　　　　*Respondent.* | Case No. 5:20-cv-04728<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>**<u>Hearing</u>**<br>**Date:**　　　August 21, 2020<br>**Time:**　　　10:00 am |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2020 at 10:00 AM or as soon thereafter as the matter may be heard, Petitioners will and hereby do move this Court, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Respondent Intuit Inc. to arbitrate Petitioners' consumer fraud and antitrust claims against Intuit, in accordance with the terms of the parties' arbitration agreement.

Each Petitioner and Intuit entered into an agreement which, as Intuit itself recently insisted in this district, requires arbitration of the Petitioner's claims, and arbitration of any threshold disputes about the proper interpretation of the parties' agreement and the rules of arbitration the agreement incorporates.  Each Petitioner filed an individual demand for arbitration with the American Arbitration Association ("AAA"), the organization that the parties' agreement states must administer Petitioners' arbitrations.  Intuit repeatedly asked AAA to reject Petitioners' demands, and to determine that Petitioners must bring their claims in court instead of in arbitration. When AAA rejected Intuit's objections, Intuit sued Petitioners in California state court, seeking to enjoin Petitioners' arbitrations.  Accordingly, Intuit has "fail[ed], neglect[ed], or refus[ed] . . . to arbitrate under a written agreement for arbitration."  9 U.S.C. § 4.  And pursuant to the FAA, this Court should "direct[] that such arbitration proceed in the manner provided for in [the parties'] agreement." *Id.*

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declaration of Warren Postman, all records on file with this Court, and such further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

1    Dated: July 15, 2020                    Respectfully submitted,

2                                            /s/ Warren Postman
                                             Warren Postman (#330869)
3                                               wdp@kellerlenkner.com
                                             KELLER LENKNER LLC
4                                            1300 I Street, N.W., Suite 400E
                                             Washington, D.C. 20005
5                                            (202) 749-8334

6                                            Sean Duddy (*pro hac vice forthcoming*)
                                                skd@kellerlenkner.com
7                                            KELLER LENKNER LLC
                                             150 N. Riverside Plaza, Suite 4270
8                                            Chicago, Illinois 60606
                                             (312) 741-5220

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Warren Postman (#330869)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
 (202) 749-8334

Sean Duddy (*pro hac vice forthcoming*)
 skd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AALIYAH JOLLY, et al., | Case No.  5:20-cv-04728 |
| *Petitioners*, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| vs. | |
| INTUIT INC. | **Hearing** |
| *Respondent*. | **Date:**     August 21, 2020 |
| | **Time:**     10:00 am |

1

# <u>TABLE OF CONTENTS</u>

2

3
SUMMARY OF ARGUMENT ............................................................................................ i

4

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

5

I.        BACKGROUND ......................................................................................... 1

6

     A.    Intuit Imposes a Broad Arbitration Agreement on Its Customers. ............................ 1

7

     B.    Petitioners File Arbitration Demands That Meet AAA's Filing Requirements. .......... 3

8

     C.    Intuit Ignores AAA's Administrative Determinations and Asks A Court to Resolve Issues Delegated to Arbitration By Its Agreement. ...................................................... 7

9

10

II.       STATEMENT OF ISSUES TO BE DECIDED ......................................... 8

11

III.      ARGUMENT ............................................................................................... 8

12

     A.    Intuit and Petitioners are Parties to an Arbitration Agreement That Covers Petitioners' Claims and the Parties' Disputes. ................................................................ 10

13

     B.    Intuit Has Refused to Arbitrate. ................................................................................. 11

14

     C.    Intuit Must Comply With AAA's Administrative Determinations, and Raise Its Arguments With Individual Arbitrators. .................................................................... 12

15

16

IV.     CONCLUSION .......................................................................................... 14

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                           **PAGE(s)**

*Abernathy v. DoorDash, Inc.*,
   No. C 19-07545 WHA, 2020 WL 619785 (N.D. Cal. Feb. 10, 2020) ...................................... i

*Allemeier v. Zyppah, Inc.*,
   No. CV 18-7437 PA, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ...................................... 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 6

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
   532 U.S. 411 (2001) ............................................................................................................ 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................................................................... 11

*Dealer Comp. Servs., Inc. v. Old Colony Motors, Inc.*,
   588 F.3d 884 (5th Cir. 2009) ........................................................................................... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) .............................................................................................. 7, 8, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ......................................................................................................... i, 7

*Jones v. Gen. Motors Corp.*,
   640 F. Supp. 2d 1124 (D. Ariz. 2009) .............................................................................. 9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc*,
   363 F.3d 1010 (9th Cir. 2004) ............................................................................. iii, 7, 10, 11

*Meyer v. T-Mobile USA Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011) ............................................................................. 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ......................................................................................................... ii, 9

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................................... ii, 10

*Williams v. Tully*,
   No. C-02-05687-MMC, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) ................................. 11

**STATUTES**

9 U.S.C. § 4 ....................................................................................................................... *passim*

9 U.S.C, § 10 ............................................................................................................................ 3

15 U.S.C. § 1 ............................................................................................................3

15 U.S.C. § 2 ............................................................................................................3

**OTHER AUTHORITIES**

AAA Consumer Arb. Rule R-1 ........................................................................... *passim*

AAA Consumer Arb. Rule R-14 .................................................................. ii, iv, 5, 8

AAA Consumer Arb. Rule R-4 ................................................................................. iv

AAA Consumer Arb. Rule R-53 .......................................................................... ii, iv

AAA Consumer Arb. Rule R-6 ........................................................................... iv, 3

AAA Consumer Arb. Rule R-9 ............................................................................2, 3

*Callaway v. Intuit Inc.*,
   No. 19CV354484 (Cal. Super. Ct. Oct. 10, 2019), Intuit Mot. to Compel ........................... i, iv

*In Re Intuit Free File Litig.*,
   No. 3:19-cv-02546-CRB (Oct. 28, 2019), Intuit Mot. to Compel, ECF No. 97 ............. *passim*

*Macklin v. Intuit Inc.*,
   No. 19CV347208 (Cal. Super. Ct. Oct. 10, 2019), Intuit Mot. to Compel ........................... i, iv

# SUMMARY OF ARGUMENT

Petitioners are 5,428 individuals who filed their taxes using TurboTax Online, an Intuit product. Petitioners were eligible for free tax-filing services through a program offered by the Free File Alliance—a consortium of tax preparation and filing companies of which Intuit was a member—which promised to offer free tax filing to the substantial majority of U.S. taxpayers, in return for the IRS agreeing to not enter the market for online tax-filing services. But instead of offering Petitioners the free filing services it had promised the IRS, Intuit actively steered Petitioners to its own commercial website, where it misleadingly told them that they were not eligible for its "TurboTax Free Edition," and were instead required to pay fees to file their taxes online through TurboTax. Through this scheme, Intuit deceived a formidable potential competitor—the United States government—from entering the market for online tax preparation and filing services, and it colluded with the other members of the Free File Alliance to steer taxpayers away from free filing products and to the members' respective paid products. Petitioners seek to individually arbitrate consumer fraud and antitrust claims against Intuit.

Recent proceedings in this district could understandably have left the impression that Intuit would be all too pleased to arbitrate with Petitioners, as Intuit sought to compel a class of consumers, raising claims substantially similar to Petitioners,' to arbitration. *See* Intuit's Mot. Compel, *In Re Intuit Free File Litig.*, No. 3:19-cv-02546-CRB (Oct. 28, 2019), ECF No. 97. That impression would be mistaken. While Intuit told the court in this district that its customers are *required* to arbitrate their claims, the company tells Petitioners—who demand arbitration—that they must proceed *in court*. That strategy is unfortunately not new. As another court in this district described it:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the

arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate.

*Abernathy v. DoorDash, Inc.*, No. C 19-07545 WHA, 2020 WL 619785, at *4 (N.D. Cal. Feb. 10, 2020). Companies such as Intuit do not truly view arbitration as a speedy and efficient alternative to judicial proceedings for a substantial number of plaintiffs. They wield their arbitration clauses to shield them from liability, with no intention of complying with the contract they drafted if thousands of aggrieved consumers actually retain counsel and individually arbitrate their claims. This heads-we-win-tails-you-lose approach cannot be reconciled with the Federal Arbitration Act ("FAA"), which requires that arbitration agreements be strictly enforced according to their terms.

Petitioners filed individual demands for arbitration against Intuit, invoking the arbitration agreement included within Intuit's Terms of Use (the "TERMS"). The agreement requires individual arbitration, administered by the American Arbitration Association ("AAA") under AAA's Consumer Arbitration Rules, of "any dispute or claim relating in any way to the services" offered on TurboTax's website. *See* Decl. of Warren Postman, Ex. B. AAA's rules, in turn, dictate that before an individual arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." Consumer Rule 53.[1] The rules also include a delegation clause, which states that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Consumer Rule 14(a).

AAA made a binding determination that each Petitioner's arbitration demand met AAA's filing requirements, and it began administering each Petitioner's individual arbitration. But rather than proceed with Petitioners' arbitrations, Intuit waged a months-long campaign to avoid arbitration. It objected to the merits of Petitioners' claims, the form of Petitioners' demands, the method by which Petitioners filed their demands, AAA's ability to neutrally administer the arbitrations, and the amount of fees Intuit is required to pay under the terms of its agreement. *See*

---

[1] Available at https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf.

*generally* Postman Decl., Ex. D.   Intuit also repeatedly argued that under the terms of the arbitration agreement and AAA's rules, it may elect to force Petitioners' demands out of arbitration and into small claims court.   *See id.*

AAA rejected each of Intuit's arguments, determining that these objections must be decided by individual arbitrators.   Intuit paid the initial filing fees necessary for each Petitioner's arbitration to proceed.   But then, rather than accepting AAA's determinations, Intuit sued Petitioners in California state court, seeking declaratory relief on questions that Intuit's agreement says only an arbitrator may answer.   Intuit's lawsuit seeks: (i) a declaration and injunction that Petitioners may *not* proceed in arbitration and *must* proceed in court, and (ii) a declaration that Petitioners seek "de facto" class or representative arbitration barred by the TERMS.   Intuit also seeks a declaration that California Senate Bill 707, which imposes sanctions on a "drafting party" that fails to pay the fees necessary for arbitration to proceed under a consumer arbitration agreement, is preempted by the Federal Arbitration Act ("FAA").   *See generally* Intuit's Compl., Postman Decl., Ex. E.

Intuit has breached its agreement by refusing to arbitrate and by asking a court to resolve disputes that have been delegated to an arbitrator.   Accordingly, this Court should compel Intuit to arbitrate Petitioners' claims under the FAA, which announces a simple test.   When (i) the parties have entered into a valid arbitration agreement, (ii) the arbitration agreement covers the parties' dispute, and (iii) one party has refused to arbitrate, federal courts must enforce the arbitration clause according to its terms.   *See* 9 U.S.C. § 4; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).   That test is easily satisfied here.

First, every Petitioner completed the steps required to sign in to use Intuit's TurboTax Online tax preparation and filing services—the same steps Intuit has repeatedly claimed are sufficient to bind its customers to the arbitration agreement—and has properly filed a demand to arbitrate under that agreement.   *See* Intuit's Mot. Compel, *In Re Intuit Free File Litig.*; Intuit's Mot. Compel, *Callaway v. Intuit Inc.*, No. 19CV354484 (Cal. Super. Ct. Oct. 10, 2019), Postman Decl., Ex. H; Intuit's Mot. Compel, *Macklin v. Intuit Inc.*, No. 19CV347208 (Cal. Super. Ct. Oct.

10, 2019), Postman Decl., Ex. I.  Intuit has conceded that each Petitioner may invoke the agreement in asserting his or her claims.  *See* Intuit's Compl. ¶ 87, *id.*, Ex. E.

Second, Intuit's arbitration agreement indisputably covers Petitioners' underlying consumer fraud and antitrust claims.  And by incorporating AAA's rules, including the delegation provision, the parties' arbitration agreement also covers all disputes about the form and substance of Petitioners' arbitration demands, Intuit's interpretation of the agreement, or whether AAA's rules allow Intuit to force Petitioners' claims out of arbitration and into court.  As Intuit itself recently asserted in this district: "[A]n arbitrator—and not this Court—must decide threshold questions of arbitrability, including questions of scope and enforceability."  Intuit's Mot. at 11, *In Re Intuit Free File Litig.*

Third, Intuit has refused to arbitrate.  Intuit repeatedly asked AAA to close Petitioners' arbitrations and force Petitioners' claims into court.  When AAA rejected Intuit's arguments, determining that those arguments are reserved for individual arbitrators under the delegation clause incorporated by the parties' arbitration agreement, Intuit sued Petitioners—its own customers—in California state court.  Intuit has used that lawsuit to extract from AAA a 30-day stay of Petitioners' arbitrations, it has sought an additional stay from AAA, and it has asked the state court to permanently enjoin Petitioners' arbitrations and declare that Intuit can force Petitioners' claims out of arbitration and into court.  It is well-established that such conduct constitutes a refusal to arbitrate under the FAA.  *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 4–5 (1983) (concluding that a party refused to arbitrate when it filed a state court action (i) asserting various defenses to arbitration, (ii) seeking a declaration that its counterparty had no right to arbitrate, and (iii) seeking a stay of arbitration).

This Court should accordingly issue an "order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The parties' agreement requires Intuit to arbitrate not only Petitioners' underlying claims, but also Intuit's objections to proceeding with Petitioners' arbitrations.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  This Court should thus order Intuit to arbitrate the parties' disputes in accordance with their arbitration agreement, making clear that Intuit must raise any arbitrability arguments—including its argument

1  that the parties' agreement allows it to unilaterally elect to litigate Petitioners' claims in court

2  rather than in arbitration—before individual arbitrators, and must therefore comply with AAA's

3  administrative determinations so that individual arbitrators may be appointed. *See Lifescan, Inc.*

4  *v. Premier Diabetic Servs., Inc*, 363 F.3d 1010, 1011–13 (9th Cir. 2004) (conclusively deferring

5  to AAA's administrative determination).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     BACKGROUND

**A.     Intuit Imposes a Broad Arbitration Agreement on Its Customers.**

Intuit recently explained in a motion to compel a class of consumers to arbitration that each TurboTax customer is required to accept an arbitration agreement to use TurboTax's platform. *See* Intuit's Mot. Compel at 1, *In Re Intuit Free File Litig.*  To access TurboTax Online during the relevant period, Intuit's customers were required to either create an Intuit account or sign into an existing account.  *See* Sun Decl. ¶ 4, *In Re Intuit Free File Litig.*, ECF No. 97-2.  When customers signed into their accounts, they clicked a button acknowledging that they "agree to the TurboTax Terms of Use." *Id.* ¶ 5.  TurboTax's website further contained hyperlinked text leading customers to TurboTax's terms of use (the "TERMS").  *See id.* ¶ 6.  And the TERMS contained an arbitration agreement.  *See id.*, Ex. 1; Postman Decl., Ex. B.  Each Petitioner used TurboTax Online to file his or her taxes, and therefore was required to complete the above process.  *See* Postman Decl. ¶ 7; *id.*, Ex. A.

The TERMS provide that "[a]ny dispute or claim relating in any way to the services or this agreement will be resolved by binding arbitration, rather than in court, except that *you* may assert claims in small claims court if your claims qualify."  TERMS § 14 (emphasis added).[2]  The arbitration must be individual: Both the customer and Intuit "waive the right to participate in a class action or litigate on a class-wide basis," and both the customer and Intuit agree that they will not bring a dispute as a "representative proceeding." *Id.*

The TERMS also provide that each customer's arbitration "shall be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules."[3] *Id.*  By designating AAA's Rules to govern disputes, Intuit and its customers have "made th[o]se

---

[2] After Petitioners filed their demands for arbitration, Intuit revised the TERMS applicable for the most recent tax year to give *both* parties the right to remove arbitrations to small-claims court. *See,* tax year 2019 TERMS § 14, available at https://turbotax.intuit.com/corp/license/online/.  The TERMS governing Petitioners were substantively the same over all relevant time periods.  For convenience, Petitioners will cite and quote the TERMS applicable to tax year 2018, as cited by Intuit in its motion to compel.

[3] *Available at* https://adr.org/sites/default/files/Consumer_Rules_Web_1.pdf.

1   [rules] a part of their arbitration agreement," and thereby "authorize the AAA to administer the

2   arbitration."  Consumer Rules 1(a), (b).  However, "[t]he consumer and the business may agree to

3   change [AAA's] Rules . . . in writing."  Consumer Rule 1(c).  Before an individual arbitrator has

4   been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules

5   "shall be interpreted and applied by the AAA."  Consumer Rule 53.  Once an individual arbitrator

6   is appointed, "[t]he arbitrator shall interpret and apply the[] rules as they relate to the arbitrator's

7   powers and duties."  *Id.*  The arbitrator also has exclusive authority over disputes regarding (i) a

8   party's obligation to commence arbitration, or (ii) the proper interpretation of an agreement: The

9   "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

10  with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability

11  of any claim or counterclaim."  Consumer Rule 14(a).

12      Finally, the TERMS state that "[p]ayment of all filing, administration and arbitrator fees

13  and costs will be governed by the AAA's rules, but if you are unable to pay any of them, Intuit

14  will pay them for you."  *Id.*  AAA "charges fees to compensate it for the cost of providing

15  administrative services," and it may "require the parties to deposit in advance of any hearings such

16  sums of money as it decides are necessary to cover the expense of the arbitration, including the

17  arbitrator's fee."  Consumer Rules 4, 6.  The Consumer Rules include a "fee schedule" that governs

18  arbitration filing fees and arbitrator fees.  Consumer Rule 4.  The fee schedule applicable to

19  Petitioners' arbitrations imposes a $200 nonrefundable filing fee on each consumer and a $300

20  nonrefundable filing fee on Intuit.  *See* Costs of Arbitration, AAA Consumer Rules at 33.  The fee

21  schedule further imposes a $1,400 "case management" fee and a $1,500 "arbitrator compensation"

22  fee on the respondent company, to be paid as AAA initiates consumers' cases.  *See id.*

23      Intuit has repeatedly relied on the TERMS and the AAA rules the TERMS incorporate, to

24  force its customers' claims into arbitration, including recently in this district.  *See* Intuit's Mot.

25  Compel, *In Re Intuit Free File Litig.*; Intuit's Mot. Compel, *Callaway*; Intuit's Mot. Compel,

26  *Macklin*.  In doing so, Intuit argued that both its customers' underlying claims *and* any arguments

27  about whether to require arbitration must be submitted to an arbitrator "because the parties agreed

28

1    to delegate the threshold questions of arbitrability to the arbitrator."  Intuit's Mot. Compel at 9, *In*

2    *Re Intuit Free File Litig.*

3    **B.    Petitioners File Arbitration Demands That Meet AAA's Filing Requirements.**

4          On October 1, 2019 and January 28, 2020, undersigned counsel filed demands for

5    arbitration on behalf of 10,497 Intuit customers, including Petitioners.[4]  *See* Postman Decl. ¶ 11.

6    Each demand was submitted on AAA's official demand form, contained each claimant's individual

7    contact information, described each claimant's individual claims, and requested individual relief.

8    *See id.*, Ex. C.  Intuit has admitted that Petitioners' demands are "consistent with the procedural

9    requirements of the TurboTax arbitration agreement."  Intuit's Mot. at 11 n.5, *In Re Intuit Free*

10   *File Litig.* (referencing Petitioners' arbitration demands, in seeking to compel a class of Intuit

11   customers to arbitration).  AAA determined that each Petitioner's demand met AAA's filing

12   requirements, and it invoiced Intuit for its administrative filing fees so that the arbitrations could

13   move forward.  *See* Postman Decl. ¶ 14. [5]

14         In response, while concurrently seeking in this district to compel a class of its customers

15   to arbitration, Intuit undertook a months-long campaign to avoid commencing Petitioners'

16   arbitrations.  *See generally id.*, Ex. D.  The company objected to the merits of Petitioners' claims,

17   *see id.* at 1–4, 8–13, 19–23 (letters of Feb. 10, Feb. 18, and Mar. 13), the form of Petitioners'

18   demands, *see id.* at 1–4 (letter of Feb, 10), the method by which Petitioners filed their demands,

19   *see id.*, and the fact that "the arbitration fees alone" to begin arbitrating Petitioners' claims "would

20   dwarf the total amount paid by these claimants to file their taxes using a TurboTax product," *see*

21   *id.* at 1–4, 8–13, 19–23, 42–44 (letters of Feb. 10, Feb. 18, Mar. 13, May 12).  Intuit even suggested

22   that AAA could not remain neutral because it had a pecuniary interest in collecting administrative

23   fees—the very fees required by the published fee schedule and rules *Intuit chose* when it drafted

24   its arbitration agreement.  *See id.* at 19–23, 42–44 (letters of Mar. 13 and May 12).  And it sent a

25   letter to AAA's General Counsel threatening AAA with "legal risk" if it did not reverse its

26   _____

     [4] On July 15, 2020, Petitioners amended their arbitration demands to add antitrust claims against
     Intuit under the Sherman Act, 15 U.S.C. §§ 1, 2.

27   [5] Petitioners' counsel recently filed demands for arbitration on behalf of nearly 35,000 additional

28   Intuit customers.

interpretation of the AAA Rules. *See id.* at 42–44 (letter of May 12).  Intuit did not, however, dispute that Petitioners could invoke the TERMS's arbitration agreement to pursue their claims.

Of all Intuit's objections, its most vigorous, oft-repeated argument was that it could invoke AAA Consumer Rule 9(b) to force Petitioners out of arbitration and into small claims court. *See id.* at 1–4, 8–13, 19–23, 31–34, 42–44 (letters of Feb. 10, Feb. 18, Mar. 13, Apr. 20, and May 12). Consumer Rule 9(b) states:

> If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:
>
> (a) The parties may take their claims to small claims court without first filing with the AAA.
>
> (b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.
>
> (c) After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

Commercial Rule 9.  The TERMS governing Petitioners' arbitrations, however, differ from Consumer Rule 9(b) in an important respect: They provide the small-claims option only to Intuit's customers, not Intuit.  *See* TERMS § 14 (stating that "[a]ny dispute or claim relating in any way to the services or this agreement will be resolved by binding arbitration, rather than in court, except that *you* may assert claims in small claims court if your claims qualify" (emphasis added)).

To avoid application of that plain language, Intuit argued that the TERMS cannot prevent the company from forcing Petitioners out of arbitration and into court because such a reading would violate Principle 5 of AAA's Due Process Protocol.  *See* Postman Decl., Ex. D at 8–13 (letter of Feb. 18).  Principle 5 states that "Consumer ADR Agreements should make it clear that all parties retain the right to *seek relief* in a small claims court for disputes or claims within the scope of its jurisdiction."  Due Process Principle 5 (emphasis added).[6]  AAA will only administer

---

[6] Available at https://kl.link/3ihjJsc.

an arbitration "if the AAA determines the [parties'] agreement substantially and materially complies with the due process standards." Consumer Rule 1(d).

Intuit also framed its small claims court argument as beneficial for both the company and Petitioners. *See* Postman Decl., Ex. D at 2, 4–5 (letter of Feb. 18). But even a cursory review of the rules and procedures governing small-claims court in most states reveals why Intuit is so eager to avoid arbitration and litigate Petitioners' claims: Small-claims court is a decidedly inferior forum for Petitioners, and far more favorable to Intuit. For instance, in California, a plaintiff in small-claims court generally cannot be represented by an attorney. *See* Small Claims Court: Basic Considerations and Questions.[7] The plaintiff must present his or her case at an in-person court hearing, unlike in arbitration, which may be decided on the papers. *See id.*; *see also* TERMS § 14. And most significantly, a defendant that loses in California small claims court has an automatic right of appeal, *de novo*, to California Superior Court while a plaintiff who loses generally has no appeal rights. *See* Small Claims Appeals.[8] By contrast, both parties to an arbitration may challenge an award, but only on very narrow grounds. *See* 9 U.S.C, § 10. In sum, by forcing Petitioners' claims out of arbitration and into small-claims court, Intuit would gain a free shot at each Petitioner's case, would eliminate Petitioners' ability to have counsel argue their claims, and would save itself the arbitration fees and costs that it agreed to pay, while imposing significant burdens on Petitioners, who would be required to argue their own claims at in-person hearings.

To preserve their right to arbitration, Petitioners asked AAA to reject Intuit's small claims argument. Petitioners first noted that Intuit's argument turns on an interpretation of the TERMS's arbitration agreement, *i.e.*, that by saying "you" have a right to elect small-claims court, the TERMS truly meant "we and you." *See* TERMS § 14. But by incorporating AAA's delegation clause, the arbitration agreement requires an arbitrator, not Intuit or a court, to decide what the arbitration agreement means. Petitioners also argued that the plain language of the TERMS's arbitration agreement reserves the small-claims option only for Intuit's customers, not for Intuit. To the extent that language could be read to conflict with Consumer Rule 9(b), the Consumer

---

[7] Available at https://kl.link/3dllK38.

MEMORANDUM ISO MOTION TO COMPEL ARBITRATION
CASE NUMBER: 5:20-cv-04728

1   Rules state that "[t]he consumer and the business may agree to change these Rules . . . in writing,"

2   Consumer Rule 1(c), which Petitioners and Intuit have done via the TERMS.  Petitioners further

3   argued that applying the TERMS to prevent Intuit from removing Petitioners' arbitrations to court

4   does not conflict with AAA's Due Process Protocol, which only protects a party's "right to *seek*

5   *relief* in a small claims court."  Due Process Protocol, Principle 5 (emphasis added).  Petitioners,

6   not Intuit, "seek relief" in these matters.  Finally, Petitioners argued that at most, the TERMS are

7   ambiguous as to whether Intuit can force Petitioners out of arbitration, and as Intuit has repeatedly

8   argued, the federal policy favoring arbitration requires that any ambiguity be construed in favor of

9   arbitration.  *See, e.g.*, Intuit's Mot. at 12, *In Re Intuit Free File Litig.* ("'[A]ny doubts concerning

10   the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" (quoting *Moses H.*

11   *Cone*, 460 U.S. at 24–25)).

12        AAA refused to close Petitioners' cases in favor of small-claims court.  AAA explained

13   that it "views the parties' disagreement regarding the interpretation and application of the small

14   claims provision in the parties' arbitration clause, Rule 9 of the Consumer Arbitration Rules, and

15   the AAA's Consumer Due Process Protocol as an arbitrability dispute," and thus "will proceed

16   with the administration of these cases so that the issue can be presented to the appointed

17   arbitrators."  *See* Postman Decl., Ex. D at 35–36 (letter of Apr. 24); *see also id.* at 17, 29–30 (letters

18   of Mar. 6 and Apr. 9).  AAA further confirmed that it "conduct[ed] an administrative review of

19   the parties' arbitration agreement at the time of filing and determined that it substantially and

20   materially complies with the due process standards of the Consumer Due Process Protocol."  *Id.*

21   at 35–36 (letter of Apr. 24).

22        Intuit next sought to elevate the parties' small-claims dispute to AAA's Administrative

23   Review Counsel ("ARC").  *See id.* at 19–23 (letter of Mar. 13).  However, the ARC only reviews

24   "certain administrative decisions arising in the AAA's large, complex domestic caseload."  ARC

25   Review Standards.[9]  Because each Petitioner's individual arbitration is not large or complex, AAA

26   declined to submit the parties' dispute to the ARC.[10]  *See* Postman Decl., Ex. D at 29–30 (letter of

27   [9] Available at https://kl.link/37LerR7; *see also* ARC Overview and Guidelines, available
at https://kl.link/2YkSfde.

28   [10] In addition, the ARC reviews "objections to arbitrators, locale determinations, and whether the

Apr. 9).  AAA also declined to appoint a single arbitrator to resolve the small claims dispute as to all Petitioners in a representative proceeding, which would clearly violate the TERMS's representative action waiver.  *See* Postman Decl. ¶ 22.  Having rejected all of Intuit's objections, AAA imposed a deadline of March 20, 2020, for Intuit to pay the initial filing fees necessary to commence administration of Petitioners' arbitrations.  *See id.*, Ex. D at 17–18 (letter of Mar. 6). Intuit paid those fees "under protest."  *See id.* at 31–34 (letter of Apr. 20).

In accordance with its rules and the TERMS, AAA has continued to administer Petitioners' cases as "individual arbitrations, with individual parties and case numbers."  *See id.* at 35–36 (letter of Apr. 24).  As of the filing of this motion, AAA has initiated hundreds of Petitioners' individual arbitrations—the first step towards assigning individual arbitrators—and has assured the parties that it will initiate the remaining arbitrations in short order.  *See id.* ¶ 28.  Under the TERMS and AAA's rules, Intuit will owe a $1,400 Case Management Fee and a $1,500 Arbitrator Retainer fee for each Petitioner whose arbitration is initiated.  *See* Costs of Arbitration, AAA Consumer Rules at 33.  Those fees will be due on a rolling basis in September, October, and November 2020, at which point AAA will assign an arbitrator to each Petitioner's case.  *See* Postman Decl. ¶ 19; *id.*, Ex. D at 48–50 (letter of May 27).

## C.    Intuit Ignores AAA's Administrative Determinations and Asks A Court to Resolve Issues Delegated to Arbitration By Its Agreement.

By agreeing to arbitrate under the AAA rules, Intuit agreed to be bound by AAA's administrative determinations and to delegate questions of arbitrability to individual arbitrators. *See* Consumer Rule 14(a).  But Intuit refuses to accept AAA's administrative determinations, and it refuses to accept the consequences of the delegation clause it wrote into the TERMS.  On June 12, 2020, Intuit sued Petitioners in Los Angeles Superior Court. *See generally* Intuit's Compl., Postman Decl., Ex. E.  Intuit's complaint seeks declaratory and injunctive relief on three grounds, in an effort to halt Petitioners' arbitrations and force Petitioners out of arbitration and into court. First, Intuit seeks a declaration and injunction that Petitioners may *not* proceed in arbitration and

filing requirements contained in the AAA Rules have been met," ARC Review Standards at 1, none of which are raised by Intuit's small claims argument.  The ARC "is not authorized to make arbitrability determinations." *Id.* at 3.

1  must proceed in court.  *See* Compl. ¶¶ 85–90; *id.* at 29.  Second, Intuit asks for a declaration that

2  Petitioners seek "de facto" class or representative arbitration barred by the TERMS.  *See id.* ¶¶

3  99–109; *id.* at 29.  Third, Intuit argues that California Senate Bill 707, which imposes sanctions

4  on a "drafting party" that fails to pay the fees necessary for arbitration to proceed under a consumer

5  arbitration agreement, is preempted by the FAA.  *See id.* ¶¶ 91–98; *id.* at 29.  Intuit has used the

6  lawsuit to extract from AAA a 30-day stay of Petitioners' arbitrations, under AAA Consumer Rule

7  1(f).  *See* Postman Decl., Ex. F.  And it has asked AAA to extent that stay through September,

8  though no AAA rule permits such a delay.  *See id.*, Ex. G.

9          Intuit's declaratory-judgment action violates the TERMS because it asks a court to decide

10  questions that are unambiguously delegated to arbitration, and it ignores AAA determinations that

11  Intuit is required to honor.  And Intuit's request for declaratory relief regarding California Senate

12  Bill 707 is ripe only if Intuit plans to withhold the fees required to proceed with Petitioners'

13  arbitrations.  Petitioners therefore seek an order from this Court compelling Intuit to arbitrate in

14  the manner required by the TERMS.

15                    **II.    STATEMENT OF ISSUES TO BE DECIDED**

16          Whether this Court should compel Intuit to adhere to its arbitration agreement with

17  Petitioners and comply with AAA's administrative determinations.

18                              **III.    ARGUMENT**

19          The FAA requires that courts "enforce [arbitration agreements] according to their terms."

20  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  In service of that mandate, the

21  FAA codifies a party's right to seek specific performance of an arbitration agreement.  *See* 9 U.S.C.

22  § 4 (stating that a party to an arbitration agreement who is "aggrieved by the alleged failure" of

23  another party to arbitrate may obtain an "order directing that such arbitration proceed in the manner

24  provided for in such agreement.").  Intuit made each Petitioner an offer, when that Petitioner used

25  TurboTax's online platform, to arbitrate the Petitioner's disputes arising from his or her use of the

26  platform, and to arbitrate disputes about the proper interpretation of the parties' agreement and the

27  AAA rules the agreement incorporates.  Each Petitioner has accepted that offer and invoked the

28

1   agreement to arbitrate claims against Intuit, and Intuit has conceded that the agreement applies to

2   each Petitioner's claims.

3        Petitioners did everything required of them to commence arbitration under the arbitration

4   agreement and AAA's rules.  AAA made an administrative determination that each Petitioner's

5   demand met AAA's filing requirements.  AAA further determined that Intuit's small claims

6   argument raises a question of arbitrability delegated to the arbitrator overseeing each individual

7   Petitioner's arbitration.  The arbitration agreement makes AAA's rules binding on Intuit, *see C&L*

8   *Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 419 n.1 (2001)

9   (holding that when specified by contract, AAA's Rules "are not secondary interpretive aides that

10  supplement [the] reading of the contract; they are prescriptions incorporated by the express terms

11  of the agreement itself") , and therefore Intuit must comply with AAA's administrative

12  determinations under those rules, *see Lifescan*, 363 F.3d at 1011–13 (conclusively deferring to

13  AAA's administrative determination).

14       But even though Intuit has invoked its TERMS, and the delegation requirement contained

15  therein, to avoid facing claims in this very district, Intuit has refused to arbitrate with Petitioners

16  "in the manner provided for in [its] agreement." 9 U.S.C. § 4.  Intuit justifies its refusal by asserting

17  that Petitioners' demands are deficient and can be removed to small claims court.  But the TERMS

18  do not allow Intuit to decide for itself whether a demand for arbitration is sufficient or what the

19  agreement means.  Rather, the TERMS require that those issues be resolved exclusively in

20  arbitration.  And under the AAA rules the TERMS incorporate, AAA has the exclusive authority

21  to administer the arbitrations and to interpret the rules before an arbitrator has been appointed.

22  AAA did just that, considering and then rejecting Intuit's objections.  This Court should remedy

23  Intuit's refusal to accept—as the TERMS require—AAA decisions it does not like.

24

25

26

27

28

MEMORANDUM ISO MOTION TO COMPEL ARBITRATION
CASE NUMBER: 5:20-cv-04728

1   **A.   Intuit and Petitioners are Parties to an Arbitration Agreement That Covers**

2   **Petitioners' Claims and the Parties' Disputes.**

3       The FAA requires a court to compel arbitration where (i) the parties have entered into a

4   valid arbitration agreement, and (ii) the arbitration agreement covers the parties' disputes.  *See*

5   *Howsam,* 537 U.S. at 83–84.  Where, as here, the parties have delegated to the arbitrator questions

6   about whether or how the parties must arbitrate, the court need only determine that the parties have

7   entered into a valid arbitration agreement.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*,

8   139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have

9   delegated to an arbitrator, a court may not decide an arbitrability question that the parties have

10   delegated to an arbitrator.").

11       Each Petitioner used TurboTax Online to file his or her taxes within the applicable

12   limitations period.  *See* Postman Decl. ¶ 7.  Thus, Petitioners necessarily completed the steps Intuit

13   claims gave rise to an arbitration agreement "when they each signed into their respective TurboTax

14   accounts."  Intuit's Mot. at 8, *In Re Intuit Free File Litig.*  By Intuit's own account, Petitioners and

15   Intuit have agreed that each Petitioner is party to a valid agreement to arbitrate.  *See* Intuit Compl.

16   ¶ 87 (Acknowledging that "Intuit and Defendants contractually agreed" to "individual

17   arbitration"), Postman Decl., Ex. E. Each Petitioner has invoked that agreement to arbitrate

18   consumer fraud and antitrust claims against Intuit.  *See generally id.*, Ex. C.

19       That the parties have entered into a valid arbitration agreement is sufficient by itself to

20   compel arbitration, *see Schein*, 139 S. Ct. at 530, because Intuit's arbitration agreement delegates

21   to an arbitrator any questions regarding the agreement's application and scope.  *See* TERMS § 14;

22   AAA Consumer Rule 14(a) (stating that an "arbitrator shall have the power to rule on his or her

23   own jurisdiction, including any objections with respect to the existence, scope, or validity of the

24   arbitration agreement or to the arbitrability of any claim or counterclaim.").  Intuit has argued this

25   very point when attempting to avoid litigating arbitrability questions in court: "[A]n arbitrator—

26   and not this Court—must decide threshold questions of arbitrability, including questions of scope

27   and enforceability."  Intuit's Mot. Compel at 11, *In Re Intuit Free File Litig.*  Regardless, there is

28   no doubt that both Petitioners' underlying claims and Intuit's objections are arbitrable: The parties

1    agreed to arbitrate "any dispute or claim relating in any way to the services" offered by TurboTax,

2    TERMS §§ 1, 14, and they agreed that the "arbitrator shall have the power to rule on his or her

3    own jurisdiction, including any objections with respect to the existence, scope, or validity of the

4    arbitration agreement or to the arbitrability of any claim or counterclaim," Consumer Rule 14(a).

5    **B.    Intuit Has Refused to Arbitrate.**

6         Once a court concludes that the parties have entered into a valid arbitration agreement

7    covering their dispute, the court should compel arbitration if one party has refused to arbitrate.  *See*

8    9 U.S.C. § 4.  Intuit's conduct before AAA and in state court shows that it has refused to arbitrate,

9    and will continue to do so until this Court orders it to proceed with Petitioners' arbitrations.

10        When a party seeks a court order enjoining arbitration, it has refused to arbitrate.  A long

11   line of cases follows this common-sense reasoning.  *See, e.g., Moses H. Cone*, 460 U.S. at 4–5

12   (concluding that a party refused to arbitrate when it filed a state court action (i) asserting various

13   defenses to arbitration, (ii) seeking declarations that its counterparty had no right to arbitrate, and

14   (iii) seeking a stay of arbitration); *Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1145 (D.

15   Ariz. 2009) ("[T]he right to compel arbitration accrues once one of the parties takes an unequivocal

16   position that it will not arbitrate . . . . Here, Plaintiff has opposed [the] motion to enforce arbitration

17   on numerous grounds.  Plaintiff has thereby resisted arbitration and unambiguously manifested an

18   intention not to arbitrate." (citations and internal quotation marks omitted)); *Allemeier v. Zyppah,

19   Inc.*, No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *3 (C.D. Cal. Sept. 21, 2018) ("The

20   Court finds that by repeatedly refusing to pay its portion of the filing fee as determined by the

21   AAA, attempting to compel Petitioner to arbitrate in Nevada, and continuing to oppose arbitration

22   here, [the respondent] has failed or refused to arbitrate.").

23        Intuit's conduct goes beyond even those cases.  It has repeatedly urged AAA to reject

24   Petitioners' arbitration demands.  It has breached the TERMS by suing Petitioners in state court,

25   impermissibly asking the court to decide questions that the TERMS delegate exclusively to

26   arbitration.  *See generally* Intuit's Compl., Postman Decl., Ex. E.  It has used that lawsuit to delay

27   Petitioners' arbitrations.  *See id.*, Exs. F, G.  And it has asked the state court to enjoin Petitioners

28

1    arbitrations altogether and force Petitioners to litigate their claims in court.  *See* Intuit's Compl. at

2    29.  This Court should compel arbitration under Section 4 of the FAA.

3    **C.**    **Intuit Must Comply With AAA's Administrative Determinations, and Raise Its**

4          **Arguments With Individual Arbitrators.**

5          In its recent motion to compel arbitration in this district, Intuit explained at length that the

6    TERMS and AAA's Rules delegate to arbitrators any threshold issues regarding the interpretation

7    or enforceability of the TERMS or AAA's rules.  *See* Intuit's Mot. Compel at 9-11, *In Re Intuit*

8    *Free File Litig.*  That agreement to arbitrate gateway disputes "is simply an additional, antecedent

9    agreement the party seeking arbitration" asks a court to enforce.  *Rent-A-Ctr.,* 561 U.S. at 70.  And,

10   just "as a court may not decide a merits question that the parties have delegated to an arbitrator, a

11   court may not decide an arbitrability question that the parties have delegated to an arbitrator."

12   *Schein*, 139 S. Ct. at 530.  Accordingly, while Intuit repeatedly argued to AAA that the TERMS

13   and AAA's rules allow Intuit to avoid arbitrating Petitioners' claims, such arguments are not a

14   ground for avoiding arbitration; they are simply threshold disputes that Intuit must arbitrate.  AAA

15   determined as much, and has begun initiating Petitioners' cases.  *See* Postman Decl. ¶ 19.  But

16   rather than participating in the arbitral process, Intuit has asked a California state court to rule on

17   the disputes AAA concluded are delegated to arbitrators.

18         Where a party disagrees with AAA's administrative determinations, it may submit that

19   disagreement to the arbitrator once the arbitrator is appointed.  It may not, however, ignore AAA's

20   determinations and prevent an arbitral appointment in the first place, as Intuit has attempted.  The

21   Ninth Circuit's decision in *Lifescan* is illustrative.  *Lifescan* involved a AAA arbitration fee dispute

22   between Lifescan and its counterparty, Premier.  *See* 363 F.3d at 1011.  AAA had initially

23   determined that the parties should split the fees equally.  *Id.*  However, upon learning that Premier

24   was unable to pay its share of fees, AAA reallocated Premier's fees to Lifescan, with the

25   expectation that Lifescan could recoup its fees as part of any award.  *Id.*  Lifescan refused to

26   comply with AAA's determination, and instead ran to court, obtaining an order compelling

27   Premier to pay the filing fees it had been initially allocated.  *Id.*  The Ninth Circuit reversed that

28   order.  *See id.* at 1013.  It reasoned that (i) the parties incorporated AAA's rules; (ii) AAA's rules

1    "recognize the arbitrators' discretion to interpret the scope of their authority"; and (iii) while

2    AAA's fee reallocation "may not be an ideal solution to the problem of a party's failure to pay its

3    share of the fees," AAA was well within its discretion to make that determination. *Id.* at 1012–13.

4    Accordingly, the parties' arbitration had "proceeded pursuant to the parties' agreement and the

5    rules they incorporated," and neither Lifescan nor the district court had any basis to ignore AAA's

6    determination. *Id.*  Lifescan was required to proceed with arbitration as AAA dictated. *Id.* at 1013.

7    An unbroken line of cases confirms this principle.  *See, e.g.*, *Dealer Comp. Servs., Inc. v. Old*

8    *Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009) (conclusively deferring to AAA's

9    administrative determinations, to "preserve[] the flexibility and discretion in the hands of the

10   arbitrators, a policy end the FAA favors"); *Williams v. Tully*, No. C-02-05687-MMC, 2005 WL

11   645943, at *5 (N.D. Cal. Mar. 18, 2005) ("Once it is determined . . . that the parties are obligated

12   to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of

13   the dispute and bear on its final disposition should be left to the arbitrator.").

14        Because Intuit cannot deny that it entered into a valid arbitration agreement covering each

15   Petitioner's underlying claims and delegating all threshold arbitrability disputes to individual

16   arbitrators, and because Intuit has refused to submit those disputes to arbitration, this Court's role

17   is clear: It should "enforce the arbitration agreement in accordance with its terms," *Chiron Corp.*

18   *v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000), and issue an "order directing

19   that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4; *see also*

20   *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1006 (N.D. Cal. 2011) ("It was Congress's

21   clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into

22   arbitration as quickly and easily as possible." (quoting *Bell v. Koch Foods of Miss., LLC*, 358 Fed.

23   Appx. 498, 500–01 (5th Cir. 2009)).  Accordingly, this Court should order that Intuit must raise

24   any arbitrability arguments—including Intuit's argument that the TERMS allow it to unilaterally

25   elect to litigate Petitioners' claims in small claims court rather than in arbitration—before

26   individual arbitrators, and must therefore comply with AAA's administrative determinations so

27   that individual arbitrators may be appointed.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.    CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted.

Dated: July 15, 2020                                  Respectfully submitted,

/s/ Warren Postman
Warren Postman (#330869)
  wdp@Postmanlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Sean Duddy (*pro hac vice forthcoming*)
  skd@Postmanlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220