Warren Postman (#330869)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
 (202) 749-8334

Sean Duddy (*pro hac vice*)
 skd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AALIYAH JOLLY, et al., | ) Case No.  5:20-cv-04728-CRB |
| | ) |
| *Petitioners*, | ) |
| | ) **REPLY IN SUPPORT OF** |
| | ) **PETITIONERS' MOTION TO COMPEL** |
| vs. | ) **ARBITRATION** |
| | ) |
| INTUIT INC. | ) **Hearing** |
| | ) **Date:**      September 4, 2020 |
| *Respondent*. | ) **Time:**      10:00 am |
| | ) **Judge:**     Hon. Charles R. Breyer |
| | ) |

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................... 1

II.   This Court Has Subject Matter Jurisdiction Over Petitioners' Action................................. 3

      A.    This Court Has Subject Matter Jurisdiction Because Petitioners Seek to Arbitrate a
            Federal Claim.............................................................................................................. 4

      B.    Even if the FAA Allowed this Court to Analyze the Merits of Petitioners' Claims, the
            Court Would Have Jurisdiction. .................................................................................. 5

III.  Intuit's Arbitration Agreement Delegates the Parties' Disputes to Individual
      Arbitration. ........................................................................................................................... 8

      A.    Intuit's Small Claims Argument Turns on the Proper Interpretation of Intuit's
            Agreement and AAA's Rules. ..................................................................................... 9

      B.    Intuit's "De Facto Class" Argument Likewise Depends on an Interpretation of the
            Parties' Agreement.................................................................................................... 12

      C.    Intuit Does Not Seek the Type of Injunctive Relief Allowed by the Arbitration
            Agreement. ................................................................................................................. 14

IV.   Intuit Cannot Avoid its Obligation to Arbitrate by Claiming It Has Not Refused to
      Arbitrate. ............................................................................................................................ 15

V.    Intuit Cannot Rely on a Discretionary Abstention Doctrine to Avoid the FAA's
      Mandates, and Its Reliance on *Colorado River* Is Meritless in Any Event. ..................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**CASES**                                                                              **PAGE(s)**

4

*Adams v. Postmates, Inc.*,
   414 F. Supp. 3d 1246 (N.D. Cal. 2019) ........................................................3, 12, 13

5

*Adams v. Postmates Inc.*,

6
   No. 19-3042-SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) ...........................13

7

*AT&T Mobility LLC v. Bernardi*,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011)........................................................14

8

*AT&T Mobility LLC v. Concepcion*,

9
   563 U.S. 333 (2011).................................................................................................13

10

*Bell v. Hood*,

11
   327 U.S. 678 (1946)...................................................................................................6

12

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) .............................................................................13, 14

13

14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ........................................................................2, 17, 18

15

*Colorado River. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,

16
   491 U.S. 350 (1989)..................................................................................................18

17

*Colorado River Water Conservation Dist. v. United States*,

18
   424 U.S. 800 (1976)......................................................................................... *passim*

19

*Continental Ore Co. v. Union Carbide Corp.*,
   370 U.S. 690 (1962)....................................................................................................7

20

*Dohrmann v. Intuit Inc.*,

21
   2020 WL 4601254 (9th Cir. Aug. 11, 2020)....................................................14, 15

22

*Founding Members of the Newport Beach Country Club v. Newport Beach*
   *Country Club, Inc.*,

23
   109 Cal. App. 4th 944 (2003) ..................................................................................11

24

*Gelow v. Cent. Pac. Mortg. Corp.*,
   560 F. Supp. 2d 972 (E.D. Cal. 2008)......................................................................15

25

26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S.Ct. 524 (2019)......................................................................................4, 5, 8, 12

27

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,

28
   535 U.S. 826 (2002)....................................................................................................5

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES CONT.**                                                              **PAGE(s)**

3

*Jones v. Gen. Motors Corp.,*
4
    640 F. Supp. 2d 1124 (D. Ariz. 2009) ...........................................................................15, 16

5
*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019)...........................................................................................................11
6

*Leeson v. Transamerica Disability Income Plan,*
7
    671 F.3d 969 (9th Cir. 2012) ..................................................................................................6

8
*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017)  ............................................................................................................9
9

10
*Meyer v. T-Mobile USA Inc.,*
    836 F. Supp. 2d 994 (N.D. Cal. 2011) ..................................................................................17
11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
12
    460 U.S. 1 (1983).............................................................................................................18, 19

13
*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Seneca Family of Agencies,*
    255 F. Supp. 3d 480 (S.D.N.Y. 2017)...................................................................................15
14

15
*Postmates Inc. v. 10,356 Individuals,*
    No. CV 20-2783 PSG, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) .............................13, 17
16

17
*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010)........................................................................................................1, 8, 16

18
*Sakkab v. Luxottica Retail N.A., Inc.,*
    803 F.3d 425 (9th Cir. 2015) ................................................................................................13
19

20
*Sandquist v. Lebo Auto., Inc.,*
    1 Cal. 5th 233 (2016) ............................................................................................................12
21

*Simula, Inc. v. Autoliv, Inc.,*
22
    175 F.3d 716 (9th Cir. 1999) ................................................................................................18

23
*Taylor v. J.B. Hill Co.,*
    31 Cal. 2d 373 (1948) ...........................................................................................................12
24

25
*Thompson v. Ford of Augusta, Inc.,*
    No. 18-2512-JAR-KGG, 2019 WL 652396 (D. Kan. Feb. 15, 2019) ...................................10
26

27
*U.S. v. Morros,*
    268 F.3d 695 (9th Cir. 2001) ................................................................................................19

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES CONT.**                                                                              **PAGE(s)**

3

*United Steelworkers of Am. v. Am. Mfg. Co.*,
4
    363 U.S. 564 (1960)......................................................................................................4

5

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)............................................................................................3, 4, 5
6

**Statutes**
7

9 U.S.C. § 4 ..............................................................................................................3, 17, 18
8

15 U.S.C. § 26 .................................................................................................................9, 10
9

Cal. Bus. & Prof. Code § 17203 ......................................................................................9, 10
10

Cal. Civ. Proc. Code § 116.220 ..........................................................................................9
11

Cal. Civ. Proc. Code § 1281.4 ...........................................................................................19
12

Cal. Civ. Proc. Code § 1281.97 .........................................................................................17
13

**Other Authorities**
14

AAA Consumer Arb. Rule R-1.............................................................................................10
15

AAA Consumer Arb. Rule R-14...........................................................................................9
16

AAA Consumer Arb. Rule R-9.........................................................................................9, 10
17

*Byers v. Intuit, Inc.*,
18
    600 F.3d 286 (3d Cir. 2010), Mot. to Dismiss Pls.' First Am. Compl. ......................7
19

*In Re Intuit Free File Litig.*,
20
    No. 3:19-cv-02546-CRB (Oct. 28, 2019), Intuit Mot. to Compel ECF No. 97 .............. *passim*
21

*Intuit Inc., v. Andrew Dohrmann* ,
22
    2020 WL 2107072, Opening Br. of Appellant Intuit, Inc. (Apr. 23, 2020)............................15

23
*U.S. v. H&R Block, Inc. et al*
    No. 1:11-cv-00948-BAH (D.D.C December 27, 2011), September 7, 2011 Tr.
24
    of Proceedings, ECF No. 127 ...................................................................................7

25

26

27

28

## I. INTRODUCTION

In attempting to avoid its obligation to arbitrate with Petitioners, Intuit repeatedly runs from one inconvenient truth: Intuit's arbitration agreement (the "TERMS") does not simply require Intuit to arbitrate Petitioners' underlying consumer fraud and federal antitrust claims. Rather, the TERMS also require Intuit to arbitrate all threshold disputes about <u>whether</u> Intuit must arbitrate. Intuit is well aware of this fact; it took this position before this very Court when it attempted to compel class plaintiffs to arbitrate, asserting that "an arbitrator—and not this Court—must decide threshold questions of arbitrability, including questions of scope and enforceability." Intuit's Mot. to Compel Arbitration at 11, *In Re Intuit Free File Litig.*, No. 3:19-cv-02546-CRB (Oct. 28, 2019), ECF No. 97. And it is blackletter law that such an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). This fact dooms each of Intuit's arguments against being compelled to arbitration.

Intuit attacks the jurisdiction of this court by claiming that the federal claims Petitioners have raised in arbitration lack merit. But the TERMS commit to an arbitrator the question of whether Petitioners' claims are meritorious, and establishing federal jurisdiction under the FAA does not require a court to do the arbitrator's job. Petitioners seek to compel arbitration of a federal statutory claim, and that undisputed fact establishes federal jurisdiction in this action. And, in all events, Intuit's assertion that Petitioners' antitrust claims are frivolous is, itself, frivolous.

Intuit next argues it should not have to arbitrate Petitioners' claims because the TERMS and AAA rules allow it to force Petitioners into small claims court. But that argument asks this Court to decide a threshold question of arbitrability, which Intuit must submit to arbitration. And even if the Court could decide arbitrability questions, Intuit's small claims court argument is meritless. The TERMS expressly state that <u>only Petitioners</u> can elect to bring their claims in small claims court; Intuit has no right to such an election. And Intuit ignores entirely that Petitioners seek injunctive relief, which would preclude a referral to small claims court even under Intuit's incorrect reading of the TERMS.

1    Intuit's argument that Petitioners' demands violate the TERMS' class waiver likewise asks

2    this Court to interpret the "scope and enforceability" of the TERMS—a task expressly committed

3    to individual arbitration.  And Intuit's class waiver argument is just as meritless as its small claims

4    court argument.  Each Petitioner filed an individual demand detailing her claims and satisfied her

5    individual filing fee.  AAA has stated that Petitioners have properly filed demands for individual

6    arbitration.  And even Intuit recognizes the folly of its argument; it is proceeding with individual

7    arbitration for hundreds of arbitrations brought in the same way as Petitioners'.

8    Intuit cannot avoid its obligation to arbitrate by claiming that it is not refusing to arbitrate.

9    That argument is doublespeak even on its own terms—if Intuit were willing to comply with its

10   arbitration agreement, it would not be asking this Court to decide disputes that the TERMS say

11   must be decided by an arbitrator.  But Intuit's argument is particularly untenable given that Intuit

12   has filed a lawsuit against Petitioners asking a state court to decide Intuit's arbitrability arguments.

13   Asking a court to decide a dispute that must be arbitrated is a refusal to arbitrate, which entitles

14   Petitioners to seek an order compelling arbitration under the FAA.

15   Finally, Intuit's request that this Court abstain from deciding this motion under *Colorado*

16   *River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), is misguided in multiple

17   respects.  The obligation to compel arbitration under the FAA is mandatory, and cannot be

18   overridden by discretionary doctrines such as *Colorado River* abstention.  *See Chiron Corp. v.*

19   *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("[The FAA] leaves no place for

20   the exercise of discretion by a district court, but instead mandates that district courts shall direct

21   the parties to proceed to arbitration on issues as to which an arbitration agreement has been

22   signed.").  And even if *Colorado River* abstention were on the table, Intuit has not come close to

23   showing the exceptional circumstances required to justify application of that doctrine.

24   Intuit has been content for years to force consumers to arbitrate their claims under the

25   TERMS, and to compel to arbitration any threshold arguments about whether consumers have to

26   arbitrate.  But now that Intuit prefers to litigate Petitioners' claims in court, Intuit claims that

27   being forced to arbitrate threshold issues of arbitrability would be unfair.  The simplest answer to

28   this appeal to fairness is that Intuit's legal obligations are clear: the TERMS require that Intuit

arbitrate even threshold disputes about the "scope and enforceability" of the TERMS.  And the FAA requires that this agreement be enforced regardless of Intuit's policy arguments about the fairness of having to participate in individual arbitration.  But there is also nothing unfair about requiring Intuit to arbitrate.  Intuit drafted the TERMS and incorporated the AAA rules and fee schedule knowing full well that some customers could bring claims for modest damages in arbitration, and that Intuit could be required to pay relatively substantial fees as a result.  As AAA has repeatedly found, Petitioners have complied with the process required by the TERMS and the AAA Rules.  And as another court in this district has observed in response to similar arguments by a defendant facing a large number of individually filed arbitrations, such filings are the <u>only option</u> plaintiffs have when subject to the sort of arbitration agreement at issue here:

> Throughout its various briefs, Postmates expends considerable energy accusing Petitioners of using the cost of the arbitration process as a means of coercing Postmates into settling their claims expeditiously. However, under the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did. Since the Fleet Agreement bars class actions, each demand must be submitted on an individual basis. Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.

*Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1252 n.2 (N.D. Cal. 2019).  Intuit should not be heard to complain because it does not like the result of numerous consumers complying with the arbitration process it imposed on them.

Intuit does not dispute that each Petitioner is party to a valid agreement to arbitrate with Intuit.  And that agreement requires Intuit to arbitrate all threshold issues about whether Petitioners are entitled to arbitrate.  Intuit has violated that agreement by filing a lawsuit asking a court to decide arbitrability questions that must be submitted to an arbitrator.  Petitioners are therefore entitled to an order compelling Intuit to arbitrate.

## II.     This Court Has Subject Matter Jurisdiction Over Petitioners' Action

This Court has federal jurisdiction over a petition to compel arbitration if the underlying controversy to be arbitrated involves a federal question.  *See* 9 U.S.C. § 4; *Vaden v. Discover Bank,*

556 U.S. 49, 67–68 (2009) (federal jurisdiction exists in an action brought under the FAA if "the actual dimensions of th[e] controversy" include a federal claim). The underlying controversy here includes a federal question—whether Intuit violated the Sherman Act—so this Court has jurisdiction over Petitioners' petition and motion to compel. Intuit argues that there is no federal question because Petitioners' Sherman Act claims lack merit, but that argument misconstrues the applicable standard and impermissibly asks this Court to take on the role of the arbitrator and decide the merits of each Petitioner's antitrust claim. In all events, the suggestion that Petitioners' antitrust claims are frivolous is, itself, frivolous. Even if Petitioners' claims could be decided in court and were subject to the Federal Rules of Civil Procedure (rather than, as is the case here, committed to arbitration where no formal pleading is required), Intuit could not obtain dismissal of those claims under Rule 12(b)(6), let alone show them to be frivolous. Petitioners seek to compel arbitration of a substantial federal claim. This Court has subject matter jurisdiction.

**A.** **This Court Has Subject Matter Jurisdiction Because Petitioners Seek to Arbitrate a Federal Claim.**

This Court's jurisdiction turns on a simple factual question: Does the underlying dispute that Petitioners seek to arbitrate contain a federal claim? *See Vaden*, 556 U.S. at 62–63. The answer here is yes. Petitioners have asserted federal antitrust claims against Intuit in their demands for arbitration. This court therefore has jurisdiction.

Invoking cases that do not involve the FAA's unique jurisdictional framework, Intuit asks this Court to analyze the merits of Petitioners' federal claims, to find them frivolous, and to therefore conclude that the Court lacks jurisdiction. In doing so, Intuit invokes the wrong legal test, and yet again asks a court to decide questions that are committed to an arbitrator. "A court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (quoting *AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643, 649-50 (1986)). "The courts, therefore, have no business weighing the merits of the grievance . . . . The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568

1   (1960).  To be sure, this Court must assure itself that it has federal jurisdiction.  But, under *Vaden*,

2   doing so does not require the Court to analyze the merits of Petitioners' claims.  Rather, *Vaden*

3   simply requires the Court to answer the factual question of whether "the actual dimensions of th[e]

4   controversy" include a federal claim.  *Vaden*, 556 U.S. at 67–68.  Whether that claim may be

5   deemed "wholly groundless" is not relevant.  *Cf. Henry Schein*, 139 S. Ct. at 531 (holding that

6   courts cannot refuse to compel arbitration even if an issue to be arbitrated is "wholly groundless").

7         Intuit misleadingly invokes *Vaden's* directive that a party cannot "recharacterize an

8   existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid

9   in compelling arbitration."  *Vaden*, 556 U.S. at 68.  But in *Vaden*, the plaintiff in arbitration did

10   not allege any federal claims at all; the district court relied for jurisdiction on the defendant's

11   <u>counterclaims</u>.  *Id.* at 54–55, 58, 68.  The language Intuit quotes merely restates the blackletter rule

12   that "a counterclaim . . . cannot serve as the basis for [federal] jurisdiction" of a state-law dispute.

13   *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002).

14         The principle upon which the Supreme Court relied in *Vaden*—that when considering

15   jurisdiction a court should look to "the actual dimensions of [the underlying] controversy," rather

16   than a party's "[a]rtful" characterization of that controversy, *Vaden*, 556 U.S. at 67–70—supports,

17   rather than undercuts, jurisdiction here.  Petitioners have alleged federal antitrust claims relating

18   to their use of Intuit's online tax preparation and filing products.  Intuit does not dispute that those

19   claims are covered by its arbitration agreement.  *See* TERMS § 14, Postman Decl., Ex. B, Dkt. 4-

20   2.  And Intuit cannot cite a single case involving the FAA, in which a court renounced federal-

21   question jurisdiction because the federal claim was purportedly weak.  This Court should reject

22   Intuit's attempts to recharacterize Petitioners' underlying claims, "when actual litigation has

23   defined the parties' controversy."  *Vaden,* 556 U.S. at 68.

24   **B.     Even if the FAA Allowed this Court to Analyze the Merits of Petitioners' Claims,**

25   **the Court Would Have Jurisdiction.**

26         Even putting aside the FAA, Intuit's belief that it will defeat Petitioners' federal antitrust

27   claims, Opp'n at 19–21, does not create an issue of jurisdiction.  "Whether the complaint states a

28   cause of action on which relief could be granted is a question of law and just as issues of fact it

must be decided after and not before the court has assumed jurisdiction over the controversy.  If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946).  "Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Id.*  Rather, at a minimum, a defendant facing an action in federal court could create a jurisdiction issue only by showing that a federal claim is "clearly . . . . immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (quoting *Bell*, 327 U.S. at 682–83 (1946)).

Each Petitioner's demand has raised, at minimum, a material and substantial question as to whether Intuit's deceptive conduct has violated federal antitrust laws.  *See* Postman Decl., Ex. C, Dkt 4-3.  Intuit warns its own investors of the "competitive challenges from government entities that offer publicly funded electronic tax preparation and filing services with no fees to individual taxpayers." *Id.* at 9.  To mitigate this competitive risk, Intuit joined with its competitors to form the Free File Alliance, *id.* at 9–10, which has the "primary goal" of "keep[ing] the Federal Government from entering the tax preparation business," Written Statement of Treasury Inspector General for Tax Administration J. Russell George Before the U.S. House of Representatives Committee on Ways and Means (Apr. 6, 2006) (https://kl.link/3iXmzCg) (last visited August 17, 2020).  The Free File Alliance, in turn, promised to offer fee online tax filing services to at least 60% of United States taxpayers, in return for the IRS's promise to not offer its own free product. *See* Postman Decl., Ex. C at 10.  Intuit accepted the benefit of this deal—the elimination of a potential formidable competitor—and then actively concealed its free-file service from the public. *See generally id.*  Other members of the Alliance, including the second-largest member, H&R Block, acted in the same way, rather than taking the economically rational approach of publicizing their own free-file services to gain consumer goodwill and publicity (and, ultimately, more paying customers). *See id.* at 10.  The Alliance's collective scheme was wildly successful:  In 2019, only 2.4% of taxpayers eligible for the Free File program filed taxes using the program, and the

1    Department of Treasury estimates that more than 14 million taxpayers who were eligible for the

2    Free File program paid to use an Alliance member's commercial product instead. *See id.*  Although

3    entering into an agreement with the IRS alone was not unlawful, any further "agreement among

4    Alliance members to restrict such free services is likely a form of price fixing (or at least price

5    stabilization)."  Letter from Renata B. Hesse (Chief, Networks & Technology Section, DOJ

6    Antitrust Division) to Lori R. Larson (Chief, Public Contracts & Technology Branch, IRS General

7    Legal Services) (May 9, 2005), *Byers v. Intuit*, Mot. to Dismiss Pls.' First Am. Compl., Case 2:07-

8    cv-04753-TON, (E.D. Pa. March 5, 2008) Dkt. 34-4, at 69.[1]

9         Intuit's conduct—stalling a public free-file service by falsely promising the IRS that it

10   would make available a private free-file service, only to conceal that product from eligible

11   taxpayers—eliminated competition and illegally maintained Intuit's monopoly power over the

12   online tax-preparation and filing market.  Such conduct, if proven, violates the Sherman Act.

13        The shallow nature of Intuit's arguments further underscores that Petitioners' claims cannot

14   simply be brushed aside.  Intuit suggests that deceiving public officials cannot give rise to antitrust

15   liability, under the *Noerr-Pennington* doctrine, Opp'n at 19–20, but entering into a contract to

16   exclude a competitor from the market is "private commercial activity, no element of which

17   involved seeking to procure the passage or enforcement of laws," and subjecting such conduct "to

18   liability under the Sherman Act for eliminating a competitor . . . would effectuate the purposes of

19   the Sherman Act, and would not remotely infringe upon any of the constitutionally protected

20   freedoms spoken of in *Noerr*."  *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 707-

21   708 (1962).  Intuit also cites a decision holding that the agreement between the Free File Alliance

22   and the IRS was not by itself anticompetitive.  *See* Opp'n at 21 (citing *Byers v. Intuit, Inc.*, 600

23   F.3d 286, 295 (3d Cir. 2010)).  But Petitioners' claim here is not based on the fact that Intuit formed

24   an agreement with the IRS.  Rather, Petitioners allege that Intuit:  (i) anticompetitively deceived

25   the government into deciding not to offer a public free-file service; and (ii) anticompetitively

26   _____

[1] A TurboTax competitor has testified under oath that TurboTax encouraged other Free File
27   members to restrict free services in 2004.  *See* Testimony of Lance Dunn, *U.S. v. H&R Block, Inc. et
     al* Case 1:11-cv-00948-BAH, (D.D.C December 27, 2011) Dkt. 127, at 50:2–5 ("I mean, during 2003
28   -- after the 2003 tax season, Intuit asked the Free File Alliance members that we should restrict
     offers, which I believe is probably not legal for that group to restrain trade.").

1   agreed <u>with other FFA members</u> to raise prices for the should-be-free services.  As noted, the DOJ

2   Antitrust Division has expressly opined that such conduct would be anticompetitive.  A legal claim

3   that is supported by an opinion letter from the DOJ Antitrust Division is well-supported, not

4   frivolous.  Finally, in asserting that Petitioners' claims are frivolous, Intuit is forced to rely on

5   several (disputed) factual assertions that this Court could not consider even at the motion to dismiss

6   stage, much less during a jurisdictional inquiry.  *See* Opp'n at 18–21.  The fact that Intuit can attack

7   Petitioners' claims only by mischaracterizing Petitioners' legal theory and invoking disputed facts

8   outside the demands further illustrates that Petitioners have set forth substantial antitrust claims.

9        This Court has jurisdiction over Petitioners' motion because Petitioners' seek to arbitrate

10  well-founded federal antitrust claims against Intuit.  Intuit's factual and legal assertions about the

11  merits of those claims should be addressed to arbitrators.

12  **III.    Intuit's Arbitration Agreement Delegates the Parties' Disputes to Individual**

13  **Arbitration.**

14       Intuit has agreed to arbitrate not only Petitioners' underlying claims, but also the parties'

15  disagreements over whether those claims must be arbitrated.  Just as this Court should leave the

16  merits of Petitioners' claims to individual arbitrators, it should leave the resolution of the parties'

17  threshold disputes to individual arbitrators.  AAA has already determined as much, and that

18  determination accords with well-established Supreme Court precedent.

19       It is well-established that parties to an arbitration agreement may agree to have an arbitrator

20  decide "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or

21  whether their agreement covers a particular controversy."  *Schein*, 139 S. Ct. at 529.  And an

22  "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party

23  seeking arbitration asks the federal court to enforce, and the FAA operates on this additional

24  arbitration agreement just as it does on any other."  *Rent–A–Center*, 561 U.S. at 70.  Intuit is

25  familiar with this line of cases; it recently reminded this Court that "just 'as a court may not decide

26  a merits question that the parties have delegated to an arbitrator, a court may not decide an

27  arbitrability question that the parties have delegated to an arbitrator.'"  Intuit's Mot. to Compel

28  Arbitration at 9, *In Re Intuit Free File Litig.* (quoting *Schein*, 139 S. Ct. at 530).

1    Intuit and Petitioners reached just such an agreement here.  The agreement provides that

2    "[a]ny dispute or claim relating in any way to the services or <u>this agreement</u> will be resolved by

3    binding arbitration, rather than in court."  TERMS § 14 (emphasis added).  The agreement further

4    incorporates AAA's Consumer Rules, *id.*, which give individual arbitrators the authority to rule

5    on "the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim

6    or counterclaim," Consumer Rule 14(a).  The parties have thus agreed to arbitrate threshold

7    questions of arbitrability just as they have agreed to arbitrate the merits of Petitioners' claims.

8    Indeed, Intuit recently told this Court that "an arbitrator—and not this Court—must decide

9    threshold questions of arbitrability, including questions of scope and enforceability."  Intuit's Mot.

10   to Compel Arbitration at 11, *In Re Intuit Free File Litig*.  Both of Intuit's claims—that it may force

11   Petitioners' claims out of arbitration and into court, and that each Petitioner seeks improper class

12   arbitration—are gateway issues that have been delegated by the parties' agreement to arbitrators.

13   **A.    Intuit's Small Claims Argument Turns on the Proper Interpretation of Intuit's**

14   **Agreement and AAA's Rules.**

15   Intuit argues that under its agreement and AAA's Consumer Rules, it has a "clear right" to

16   force Petitioners' claims out of arbitration and into small claims court.  Opp'n at 26.  Of course,

17   asserting that a contract provision's meaning is "clear" does not make it so, and Petitioners

18   vigorously disagree with Intuit's reading.  This disagreement reflects a dispute over the proper

19   interpretation and scope of Intuit's agreement and AAA's rules.  And Intuit has agreed that such

20   disputes must be decided in individual arbitration. Intuit's arguments are not a basis for avoiding

21   arbitration; they are an additional dispute that Intuit is required to submit to arbitration.

22   Even if the Court could reach Intuit's arguments for avoiding arbitration, those arguments

23   are meritless.  First, AAA Consumer Rule 9(b) is inapplicable because Petitioners' claims are not

24   "within the jurisdiction of a small claims court."  Consumer Rule 9.  Each Petitioner seeks

25   injunctive relief available under California's Unfair Competition Law, *see* Cal. Bus. & Prof. Code

26   § 17203; *McGill v. Citibank, N.A.,* 2 Cal. 5th 945, 954–61 (2017), and the Clayton Act, 15 U.S.C.

27   § 26.  *See* Postman Decl., Ex. C at 1 (seeking attorney' fees, interest, arbitration costs, punitive

28   damages, and injunctive relief).  That relief is not available in small claims court.  *See* Cal. Civ.

1   Proc. Code § 116.220(a)(5) (stating that injunctive relief is only available in California small

2   claims court "when a statute expressly authorizes a small claims court to award relief"); Cal. Bus.

3   & Prof. Code § 17203 (not mentioning small claims court); 15 U.S.C. § 26 (same). Thus, even

4   under Intuit's interpretation of the TERMS, Intuit cannot force Petitioners to proceed in court.

5          Second, even if Rule 9(b) could apply, "[t]he consumer and the business may agree to

6   change [AAA's] Rules . . . in writing." Consumer Rule 1(c). Accordingly, if there is a conflict

7   between an arbitration agreement and AAA's rules, the agreement must govern. And here, Intuit's

8   agreement departs from AAA's rules by eliminating Intuit's right to force Petitioners' claims out

9   of arbitration and into small claims court. The TERMS provide that "any dispute or claim relating

10  in any way to the software or this agreement will be resolved by binding arbitration, rather than in

11  court, except that you may assert claims in small claims court if your claims qualify." TERMS §

12  14 (emphases added). The "you" to which Intuit's arbitration clause refers clearly and

13  unambiguously covers only Petitioners; the TERMS expressly state they will refer to Intuit as

14  "we," "our," or "us." *Id.* at 1. As a result, only Intuit's customers have a right to elect small claims

15  court. Absent such an election, "any dispute or claim" must be resolved exclusively by arbitration.

16  Parties can, and often do, alter AAA's rules in this manner. *See*, e.g., *Thompson v. Ford of

17  Augusta, Inc.*, No. 18-2512-JAR-KGG, 2019 WL 652396, at *6–7 (D. Kan. Feb. 15, 2019)

18  (determining that an arbitration agreement that "only contemplates Plaintiff electing small claims

19  court" overrode Rule 9 and that the plaintiff could "seek an order from this Court directing that

20  the arbitration it initiated proceed in the manner provided for under the parties' agreement").

21  Tellingly, Intuit changed the TERMS for this tax year to state that "either party may elect" small

22  claims court. Intuit Tax Year 2019 Terms of Service.[2] That change would have been unnecessary

23  Intuit had the right to elect small claims court all along.

24         In response, Intuit asserts that "the obvious purpose of the provision is to implement the

25  AAA's own directive to provide 'notice' to consumers" that they may file claims in small claims

26  court. Opp'n at 28. But under California law, "[w]hen a contract is reduced to writing, the parties'

27  intention is determined from the writing alone, if possible," and the terms of the "contract are to

28  _____

[2] *Available* at https://turbotax.intuit.com/corp/license/online/.

be understood in their ordinary and popular sense." *E.g.*, *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003) (citing Cal. Civ. Code §§ 1639, 1644).  The TERMS provide no indication that the small claims provision, unlike other parts of the contract, is for notice alone.

Intuit continues to insist that small claims court is a "less costly and more efficient forum" for Petitioners' claims.  Opp'n at 7.  But Intuit ignores the massive disadvantage Petitioners would have in small claims court compared with arbitration.  Indeed, Intuit makes no attempt to address the fact that plaintiffs cannot be represented by an attorney in small claims court hearings, or the fact that Intuit may seek a *de novo* re-trial of any small claims defeat, while small claims plaintiffs have no such right.  *See* Petitioner's Mot. Compel at 5.

For that reason, AAA's Due Process Protocol is of no help to Intuit.  The Due Process Protocol only protects a party's right to <u>bring</u> claims in small claims court, and Intuit has not sought to bring claims here.  *See* AAA Due Process Protocol, Principle 5 (Small Claims) (providing that consumer agreements should clarify that "parties retain the right to <u>seek relief</u> in a small claims court") (emphasis added).  Further, the Due Process Principle Intuit invokes, Principle 5, reflects a concern for fairness <u>to consumers</u>, not Intuit.  Indeed, the Reporter's Comments state that in drafting Principle 5, AAA's "Advisory Committee concluded that access to small claims tribunals <u>is an important right of Consumers</u> which should not be waived by a pre-dispute ADR Agreement." AAA Due Process Protocol, Principle 5 & Reporter's Comments (emphasis added).  It is of no consequence to AAA whether Intuit chooses to waive its right to small claims court, so long as Intuit's customers retain that right.  Such is the case here.  *See* TERMS § 14.  Accordingly, the parties' dispute does not involve "minimum due process standards," AAA Due Process Protocol, Principle 1 & Reporter's Comments, but rather is a garden-variety dispute concerning the meaning of the agreement's terms.[3]

---

[3] At minimum, it is ambiguous whether Intuit's arbitration agreement alters the parties' small claims rights, or merely informs Intuit's customers of those rights.  And Intuit's position fails in the face of that ambiguity, under two separate canons of contract interpretation: First, the federal policy favoring arbitration mandates that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019).  Intuit said it best: "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'"  Intuit's Mot. at 12, *In Re Intuit Free File Litig.*

1    In all events, Intuit's ability to elect small claims court turns on an interpretation of the

2    parties' agreement and AAA's rules.  And the agreement's delegation clause states that such

3    disputes over the interpretation of the agreement are reserved for individual arbitrators.

4    Unsurprisingly, AAA agreed, concluding that the issues raised by Intuit were "arbitrability

5    disputes that must be resolved by an arbitrator(s)."  Postman Decl., Ex. D at 17, 29, 35–36, Dkt.

6    7-1.  This Court should likewise find that the parties' dispute over the availability of small claims

7    court is covered by the parties' agreement to arbitrate such threshold disputes, and it should

8    therefore grant Petitioner's motion to compel this dispute to arbitration.

9    **B.    Intuit's "De Facto Class" Argument Likewise Depends on an Interpretation of the**

10         **Parties' Agreement.**

11    The same framework holds true for Intuit's argument that Petitioners are seeking a "de

12    facto" class or representative proceeding barred by Intuit's arbitration agreement.  Intuit's position

13    boils down to a dispute over whether a particular Petitioner's demand complies with Intuit's

14    arbitration agreement.  That is a threshold arbitrability dispute that is delegated to individual

15    arbitrators under the TERMS.  Another court in this district recently reached the same conclusion

16    when confronted with the same argument.    *See Adams*, 414 F. Supp. 3d at 1251, 1254.  The

17    *Adams* court determined that:

18         [T]he crux of Postmates' position is that no arbitration fees are due because
19         Petitioners allegedly failed to submit individual arbitration demands in accordance
          with the Mutual Arbitration Provision. In resolving that issue, it is unnecessary to
20         resolve Petitioners' purported motivations with respect to the Class Action Waiver.
          To the contrary, the salient issue is simply whether Petitioners' demands comport
21         with the requirements of the Mutual Arbitration Provision. That determination is
          within the arbitrator's exclusive authority.
22

23    *Id.* at 1254–55.  This Court should compel Intuit to arbitrate this "gateway question of

24    arbitrability," consistent with the TERMS's delegation clause.  *Schein*, 139 S. Ct. at 529.

25    _____

26    (quoting *Moses H. Cone*, 460 U.S. at 24–25)).  Second, under the doctrine of contra proferentem,
     ambiguities in a contract's language must be construed against the drafter; here, Intuit.  *See*
27    *Taylor v. J.B. Hill Co.*, 31 Cal. 2d 373, 374 (1948) ("It is a settled rule that in case of uncertainty
     in a contract it is construed most strongly against the party who caused the uncertainty to exist—
     the party drafting the instrument.").  And that rule that "applies with peculiar force in the case of
28    a contract of adhesion."  *Sandquist v. Lebo Aut*o*., Inc.*, 1 Cal. 5th 233, 248 (2016).

1    Regardless, Intuit's "de facto class" argument does not pass the straight face test.  As the

2    Supreme Court has observed, "[c]lasswide arbitration includes absent parties."  *AT&T Mobility*

3    *LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011) (emphasis added); *see also Sakkab v. Luxottica*

4    *Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015); *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819,

5    823–30 (9th Cir. 2019) (holding that complexity does not create class arbitration; class arbitration

6    requires representative litigation).  Here, Intuit concedes that each Petitioner has in fact filed an

7    individual demand for arbitration in his or her own name, claiming individual relief.  *See* Postman

8    Decl., Ex. C; Opp'n at 33.  For all its rhetoric about the unfairness of facing numerous claims in

9    arbitration, Intuit's argument is simple: Petitioners' demands for individual arbitration were

10   transformed into demands for "de facto class" arbitration because a large number of Petitioners

11   filed similar claims at the same time, creating pressure that Intuit would not have faced if only a

12   single customer sought arbitration.  Courts have repeatedly and consistently rejected this very

13   argument, understanding that the "pressure" Intuit faces is simply a result of numerous plaintiffs

14   pursuing individual arbitrations.  *See Adams*, 414 F. Supp. at 1252 n.2 ("[T]he possibility that

15   Postmates may now be required to submit a sizeable arbitration fee in response to each individual

16   arbitration demand is a direct result of the mandatory arbitration clause and the class action wavier

17   that Postmates has imposed upon each of its couriers"); *Adams v. Postmates Inc.*, No. 19-3042-

18   SBA, 2020 WL 1066980, at *6 (N.D. Cal. Mar. 5, 2020) ("The mere fact that Petitioners filed over

19   5,000 demands within a short span of time does not transform those individual demands into a de

20   facto class arbitration, as Postmates posits."); *Postmates Inc. v. 10,356 Individuals*, No. CV 20-

21   2783 PSG (JEMx), 2020 WL 1908302, at *7 (C.D. Cal. Apr. 15, 2020) (same).

22   Indeed, even Intuit does not appear to believe its own argument.  In asking this Court to

23   compel the class plaintiffs to arbitration, Intuit cited Petitioners' demands as "consistent with the

24   procedural requirements of the TurboTax arbitration agreement."  Intuit's Mot. to Compel

25   Arbitration at 11 n.5, *In Re Intuit Free File Litig*.  And, as Intuit concedes, the company is

26   proceeding with arbitration for several hundred individual customers, represented by Petitioners'

27   counsel, who filed demands at the same time and in the same manner as Petitioners.  *See* Opp'n at

28   x (admitting that "Intuit did not elect small claims court for hundreds of demands").

13

1    Intuit's reliance on this Court's decision in *AT&T Mobility LLC v. Bernardi*, 2011 WL

2   5079549, at *6 (N.D. Cal. Oct. 26, 2011), is also misplaced.   First, the arbitration agreement at

3   issue in *Bernardi* "assign[ed] the question of arbitrability generally to the courts." *Id*. at *4.  Unlike

4   the agreement at issue in *Bernardi*, Intuit's arbitration agreement delegates Intuit's "de facto class"

5   argument to individual arbitrators.   Beyond that dispositive threshold difference, Petitioners seek

6   fundamentally different relief than the claimants in *Bernardi*.   In that case, a group of consumers

7   "all [sought] the same, non-individualized relief": to enjoin a merger.  *Id*. at *6.   Here, on the other

8   hand, each Petitioner is seeking individual monetary relief unique to that Petitioner and arising

9   from that Petitioner's individual use of Intuit's products, and an injunction, all of which is

10   permissible under the TERMS.  *See* Postman Decl., Ex. C at 1; Intuit's Mot. to Compel Arbitration

11   at 14, *In Re Intuit Free File Litig.* ("Nothing in the TERMS or the law prevents Plaintiffs from

12   seeking restitution or injunctive relief through an individual proceeding" in arbitration.).   And as

13   the Ninth Circuit has explained, the inclusion of injunctive relief alongside individual relief "does

14   not interfere with the bilateral nature of a typical consumer arbitration." *Blair v. Rent-A-Ctr., Inc*.,

15   928 F.3d 819, 829 (9th Cir. 2019).  *Bernardi* does not support Intuit's position here.

16   **C.**    **Intuit Does Not Seek the Type of Injunctive Relief Allowed by the Arbitration**

17          **Agreement.**

18          Finally, Intuit argues that its state court lawsuit seeks a permissible form of "equitable

19   relief" under the TERMS.  *See* Opp'n at 14–15.  But Intuit's position is foreclosed by Ninth Circuit

20   precedent interpreting this very contract, which explained that Intuit's agreement allows parties to

21   seek equitable relief in court only "in aid of arbitration."  *Dohrmann v. Intuit Inc*., 2020 WL

22   4601254, at *2 (9th Cir. Aug. 11, 2020).  Such relief, the court held, is confined to "claims designed

23   to maintain the status quo between the parties."  *Id.* (quoting *Comedy Club, Inc. v. Improv W.*

24   *Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009)).   The provision does not allow a party to ask a court

25   to "determine the merits of an arbitrable dispute."  *Id.* (citing *AT&T Techs., Inc. v. Commc'ns*

26   *Workers of Am.*, 475 U.S. 643, 650 (1986)).  That holding came at the request of Intuit, which told

27   the Ninth Circuit that the "equitable relief" language in its contract "does not permit the court to

28

1  supplant arbitration" and that "[i]t remains for the arbitrator to address the merits of any arbitrable
2  dispute." Intuit's Opening Br., 2020 WL 2107072, at *44, 47 (Apr. 23, 2020).

3      Intuit's state court action does not seek to "maintain the status quo between the parties"; it
4  asks the state court to "determine the merits of an arbitrable dispute." *Dohrmann*, 2020 WL
5  4601254 at *2. And beyond declaratory relief, Intuit asks the state court to enjoin and "supplant"
6  Petitioners' arbitrations altogether. *See generally* Postman Decl., Ex. E. That is not equitable
7  relief "in aid of arbitration." And it is no different from the circumstances the Ninth Circuit
8  confronted in *Dohrmann*, when the class action plaintiffs sought injunctive relief for their
9  underlying claims. Just as the merits of the underlying claims in the class action—and in
10  Petitioners' demands—are subject to an arbitration agreement, the merits of the threshold
11  arbitrability questions here are subject to an arbitration agreement (the delegation clause).
12  Accordingly, Intuit must submit its "equitable relief" argument to individual arbitrators, just like
13  all the other threshold issues it agreed to individually arbitrate.

14  **IV.  Intuit Cannot Avoid its Obligation to Arbitrate by Claiming It Has Not Refused**
15  **to Arbitrate.**

16      Although Intuit attempts to avoid a motion to compel by arguing that it has not refused to
17  arbitrate, *see* Opp'n at 11–16, that claim is untenable for two independent reasons. A party to an
18  arbitration agreement may move to compel arbitration when the other party "unequivocally refuses
19  to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously
20  manifesting an intention not to arbitrate[.]" *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F. Supp. 2d
21  972, 978 (E.D. Cal. 2008) (citing *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3rd
22  Cir.1995); 9 U.S.C. § 4). In particular, "[a] party can be deemed to have refused arbitration by
23  filing a lawsuit on a matter that comes within the scope of the arbitration clause." *Nat'l Union
24  Fire Ins. Co. of Pittsburgh, PA. v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 489 (S.D.N.Y.
25  2017) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Konvalinka*, 2011 WL 13070859, at *3
26  (S.D.N.Y. Mar. 17, 2011)). Indeed, "the very commencing of litigation can itself be interpreted
27  as a refusal to arbitrate." *Jones v. Gen. Motors Corp.*, 640 F. Supp. 1124, 1145 (D. Ariz. 2009)
28  (citing *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984)).

1    Intuit has asked a court to decide issues committed to arbitration not once, but twice.

2    First, Intuit has asked the Court in this very action to decide threshold questions of

3    arbitrability that the TERMS commit to arbitration.  When the class plaintiffs in *In Re Intuit Free*

4    *File Litigation* asked this Court to decide questions that Intuit believed were committed to

5    arbitration, Intuit understood that such a request was a refusal to arbitrate.  *See generally* Intuit's

6    Mot. to Compel Arbitration, *In Re Intuit Free File Litig.*  But Intuit's request here is no different.

7    *See Rent-A-Ctr.,* 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional,

8    antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA

9    operates on this additional arbitration agreement just as it does on any other.").

10   Second, Intuit's state court lawsuit asks that court to decide two issues of arbitrability:

11   (i) whether the parties' agreement and AAA's rules allow Intuit to force Petitioners' into small

12   claims court, and (ii) whether the form and substance of each Petitioner's individual demand, and

13   the method by which the Petitioner filed that demand, violates the agreement's terms.  As described

14   above, Intuit's agreement states that such disputes, over and above the merits of Petitioners'

15   underlying claims, must be arbitrated.  AAA already determined as much, with respect to Intuit's

16   small claims argument, and Intuit ignored that determination.  *See generally* Postman Decl., Ex.

17   D.  Because Intuit "commenced litigation . . . [Intuit] can be fairly said to have refused to arbitrate."

18   *Jones*, 640 F. Supp. 2d at 1145.  This Court should remedy Intuit's refusal and compel Intuit to

19   arbitrate with Petitioners.

20   Intuit attempts to distinguish its state court action from the consumer protection class action

21   overseen by this Court, which Intuit compelled to arbitration.  *See* Opp'n at 14–15.  But the two

22   actions are indistinguishable under the FAA.  Both the class plaintiffs and Intuit have commenced

23   litigation on issues that Intuit's agreement states must be arbitrated—the class plaintiffs seeking to

24   litigate the underlying consumer protection claims, and Intuit seeking to litigate questions of

25   arbitrability.  Intuit has refused to arbitrate in exactly the same way that it argued the class plaintiffs

26   refused to arbitrate.  *See generally* Intuit's Mot. to Compel Arbitration, *In Re Intuit Free File Litig.*

27   Intuit's claim that SB 707 is preempted by the FAA further demonstrates its intent to avoid

28   arbitration.  As Intuit notes, SB 707 allows a consumer to compel to arbitration and sanction a

**REPLY IN SUPPORT OF PETITIONERS' MOTION TO COMPEL ARBITRATION**
**CASE NUMBER: 5:20-cv-04728-CRB**

company that refuses to pay the arbitration fees required to proceed with that consumer's arbitration.  *See* Opp'n at 6; Cal. Civ. Proc. Code § 1281.97.  Thus, Intuit has no reason to fear SB 707 unless and until Intuit violates its obligation to pay the fees necessary for Petitioners' arbitrations to proceed.  And it has no basis to seek declaratory relief with respect to SB 707 unless it faces a realistic threat that Petitioners will invoke SB 707 in a motion to compel, which of course can only occur if Intuit refuses to arbitrate.  *Cf. Postmates v. 10,356 Individuals*, 2020 WL 1908302, at *7 ("[T]he Court need not reach whether [Postmates] is likely to succeed on the merits of its arguments regarding SB 707, as [Postmates] is unlikely to succeed in demonstrating that it is appropriate for it to decline to proceed by arbitration.  Any argument regarding [the Individuals'] ability to obtain penalties under SB 707 is contingent on [Postmates'] continued refusal to pay the fees to arbitrate [the Individuals'] claims, and the Court is not convinced of any need for immediate injunctive relief.").[4]

Intuit has refused to arbitrate questions which are delegated to individual arbitrators.  As the FAA requires, this Court should "enforce the arbitration agreement in accordance with its terms," *Chiron*, 207 F.3d at 1130, and issue an "order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4; *see also Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1006 (N.D. Cal. 2011) ("It was Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." (quoting *Bell v. Koch Foods of Miss., LLC*, 358 Fed. Appx. 498, 500–01 (5th Cir. 2009))).

## V.   Intuit Cannot Rely on a Discretionary Abstention Doctrine to Avoid the FAA's Mandates, and Its Reliance on *Colorado River* Is Meritless in Any Event.

As a last-ditch effort to avoid an order compelling arbitration, Intuit asks this court to abstain from ruling on Petitioners' motion.  But Intuit's arguments under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), are futile.  Intuit cannot ask this Court to defer to the state-court proceedings under *Colorado River*, because a discretionary abstention

---

[4] Petitioners do not concede that this issue can be decided in court rather than arbitration. Petitioners have not moved to compel arbitration of this issue because it is not ripe and need not be addressed in order for Petitioners to compel arbitration of the parties' current disputes.

doctrine is inconsistent with the non-discretionary nature of motions to compel under the FAA. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron*, 207 F.3d at 1130 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Indeed, the Supreme Court has specifically held that the FAA's requirement that courts enforce arbitration agreements according to their terms overrides "the consideration that was paramount in *Colorado River* itself—the danger of piecemeal litigation." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). As the Supreme Court explained, the risk of piecemeal litigation in the FAA context "is not the result of any choice between the federal and state courts; it occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 20 (emphasis added). Thus, the Court in *Moses H. Cone* held that a motion to compel arbitration must be granted even where, as here, a party urges abstention in favor of a state court action that includes parties who are not part of the federal action. *Id.* ("Under the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.").

Under the FAA, this Court must determine whether (i) a valid agreement to arbitrate exists (conceded here) and (ii) the agreement encompasses the subject matter of the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999). Because the threshold questions of arbitrability raised in Intuit's opposition are delegated to an arbitrator, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms" and compel arbitration on those threshold questions. *Chiron*, 207 F.3d at 1130 (emphasis added). Arguments about discretionary considerations under *Colorado River* are thus unavailable to Intuit.

Even applying the discretionary *Colorado River* framework, this court should not abstain from exercising jurisdiction. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Accordingly, "only exceptional circumstances justify a federal court's refusal to decide a case in deference to" parallel state court proceedings under *Colorado River*.

1    *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

2    Deferring to the fledgling state court proceedings should be particularly disfavored in the context

3    of Petitioners' motion to compel arbitration, "in view of Congress's clear intent, in the Arbitration

4    Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and

5    easily as possible." *Moses H. Cone*, 460 U.S. at 22.  This is especially true here, where "federal

6    law provides the rule of decision on the merits" of the parties' disputes over whether Intuit can be

7    compelled to arbitrate threshold arbitrability questions, which would be true "in either state or

8    federal court." *Id.* at 23–24.  As the Ninth Circuit has explained, "*Colorado River* was a state law

9    case that the Government sought to have federally adjudicated.  This case is the converse: a federal

10   law case that the [party] seeks to have adjudicated in state court." *U.S. v. Morros*, 268 F.3d 695,

11   707 (9th Cir. 2001).

12   Further, the status of Intuit's state court action strongly counsels against abstention.

13   "[P]riority should not be measured exclusively by which complaint was filed first, but rather in

14   terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21.

15   Intuit's state action has no judge, and has not even been designated as complex or non-complex.

16   Intuit has not filed any request for relief.  And Petitioners have filed a motion to stay the action,

17   invoking California law providing that a state court "shall" stay an action where a motion to compel

18   arbitration is pending on the same issues as that raised in the state action.  Cal. Civ. Proc. Code §

19   1281.4.   Far from creating a "potential for conflict," *Colorado River*, 424 U.S. at 815–16, the

20   policy of California is that the parties' dispute should be decided on a motion to compel.[5]

21   The other *Colorado River* factors likewise weigh in favor of exercising federal jurisdiction.

22   As Intuit concedes, "there is no property at stake," Opp'n at 23, and this Court is far from

23   inconvenient.  In fact, Intuit resides in this district and has brought motions to compel under this

24   very contract in this Court.  Accordingly, Intuit's claim that "convenience is not a factor," *id.*, is

25   merely an attempt to skip over a factor that cuts <u>against</u> its position.  That factor also highlights

26   ---

[5] Intuit's argument that the Anti-Injunction Act bars this Court's ability to adjudicate the petition
27   is likewise meritless.  *See* Opp'n at 25.  As Intuit, concedes "Petitioners have not formally sought
     to enjoin Intuit's state-court action." *Id.*  Rather, the stay of the state court proceedings will occur
28   by operation of state law, reflecting California's preference that a motion to compel is the
     appropriate type of action to adjudicate threshold arbitrability disputes.

the hypocrisy of Intuit's charge that Petitioners have engaged in "forum shopping" by filing a motion in this Court. Opp'n at 25. Intuit filed its action in Los Angeles Superior Court; a venue with which it and the overwhelming majority of Petitioners have no relationship. And the very purpose of Intuit's action was to obtain a preemptive declaration on issues it knew Petitioners would raise, either in court or arbitration. Having preemptively filed a lawsuit in a jurisdiction with no apparent connection to the controversy, Intuit cannot now chide its opponents for filing the exact type of action it expected them to file.

This Court is hearing a consolidated set of class actions involving the same issues as those raised by Petitioners and has already interpreted and ruled on the same arbitration agreement in the same context. This Court has far more experience with, and justification for deciding, the issues here, than a not-yet-appointed state court judge in a case with a not-yet-filed request for relief, in a venue with no substantial connection to the controversy. This Court has no reason to defer under *Colorado River*. It should compel Intuit to arbitration.

Dated: August 21, 2020

/s/ Warren Postman
Warren Postman (#330869)
  wdp@Postmanlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Sean Duddy (*pro hac vice*)
  skd@Postmanlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

REPLY IN SUPPORT OF PETITIONERS' MOTION TO COMPEL ARBITRATION
CASE NUMBER: 5:20-cv-04728-CRB