IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AALIYAH JOLLY, et al.,

       Plaintiffs,

   v.

INTUIT INC, et al.,

       Defendants.

Case No.  20-cv-04728-CRB

**ORDER DISMISSING PETITION TO COMPEL ARBITRATION**

       Intuit Inc. is embroiled in litigation arising from its allegedly fraudulent misdirection of eligible taxpayers away from its free filing service and towards paid products.  Once again, this Court has been asked to resolve a dispute arising from that litigation.  And once again, the dispute revolves around the arbitration agreement Intuit required its customers to enter before using its services.  But this time, it is unnecessary to reach the merits of that dispute.  The Court will decline jurisdiction over this matter in deference to an earlier-filed state suit, which is the more appropriate forum for sorting out the parties' competing interpretations of their arbitration agreement.  In the alternative, the petition to compel arbitration must be dismissed because Intuit has not refused to arbitrate, and this Court cannot compel it to follow the terms of an agreement it is already abiding by.

## I.      BACKGROUND

       Intuit owns TurboTax, an online tax preparation service.  Petition (dkt. 1) ¶ 18.  Intuit and other tax preparation services entered an agreement with the Internal Revenue Service to provide certain taxpayers, including Plaintiffs, the option to file their taxes for free.  Id. ¶ 19.  In return, the IRS agreed not to create its own tax filing software.  Id.  Plaintiffs allege that Intuit and other tax

preparation companies violated this agreement by misleadingly channeling eligible taxpayers to paid services instead.  Id. ¶¶ 19–20.

Both sides agree that each Plaintiff agreed to Intuit's Terms of Service when he or she signed into TurboTax.  See id. ¶¶ 2, 31.  The Terms of Service provide that "[a]ny dispute or claim relating in any way to the services or this agreement will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify" ("the Agreement").  Id. ¶ 27.  The Agreement dictates that arbitration be conducted before the American Arbitration Association, and according to the AAA's Consumer Arbitration Rules ("the Rules").  Id.  The Rules state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Id. ¶ 28.  They authorize the AAA to interpret and apply the Rules before an individual arbitrator is appointed or when the rule does not involve the "arbitrator's powers and duties."  Id.

In late 2019 and early 2020, each Plaintiff filed a demand for arbitration with the AAA, seeking to arbitrate state consumer fraud claims against Intuit.  Id. ¶ 29.  Intuit resisted Plaintiffs' claims on various grounds.  Id. ¶ 31.  Most relevant here, it claimed it was entitled to move Plaintiffs' claims out of arbitration and into small-claims court.  Id.  The AAA rejected that argument and initiated individual arbitrations for each Plaintiff.  Id. ¶ 32.  Intuit paid the initial fees for those arbitrations "under protest," per the demands of the AAA and to avoid sanctions under California Senate Bill 707.  Cole Decl. (dkt. 48-2) ¶ 25.

Intuit then filed suit in Los Angeles Superior Court, seeking a declaration that Plaintiffs' claims must proceed in small claims court, that Plaintiffs seek de facto "representative arbitration" barred by the Agreement, and that SB 707 is preempted by the Federal Arbitration Act.  Petition ¶ 33.  The AAA stayed arbitration pending the state court suit.  Id. ¶ 34.

On July 15, Plaintiffs amended their arbitration demands to add federal Sherman Act claims.  Cole Decl. ¶ 33.  They allege that Intuit engaged in unlawful anticompetitive conduct by misleading a potential competitor, the IRS, into staying out of the market for online tax preparation software, and by colluding with other tax preparation services to steer customers away

2

from the free filing option.  Petition ¶ 23.  The same day, Plaintiffs filed in the Northern District of California the instant petition to compel arbitration.  See id. at 7.  The following day, they filed this motion to compel arbitration against Intuit.  Mot. (dkt. 3) at iv.

## II.    LEGAL STANDARD

The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[P]rivate agreements to arbitrate are enforced according to their terms."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).  A party may therefore petition a United States district court "for an order directing that . . . arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

## III.    DISCUSSION

Intuit opposes Plaintiffs' motion on four grounds.  First, that this Court lacks subject matter jurisdiction over this case, because Plaintiffs' federal causes of action were added for the sole purpose of creating federal jurisdiction and are "immaterial" or "wholly insubstantial and frivolous."  Opp'n (dkt. 48) at 16–22 (quoting Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012)).  Second, that even if this Court does have subject matter jurisdiction, it should decline to exercise that jurisdiction under Colorado River Conservation District v. United States, 424 U.S. 800 (1976).  Opp'n at 22–25.  Third, that the petition to compel arbitration must be dismissed because Intuit has not refused to arbitrate.  Id. at 11–16.  Fourth, that Intuit's claims in the California case are not subject to arbitration.  Id. at 26–35.  Because the Court agrees that the petition must be dismissed either under Colorado River or on the grounds that Intuit has not refused to arbitrate, it is unnecessary to address whether Intuit's claims are in fact subject to arbitration.

### A.    Federal Question Jurisdiction

As an initial matter, this Court has subject matter jurisdiction over the petition to compel arbitration.  Plaintiffs' underlying Sherman Act claims invoke federal law, were not clearly added to manufacture jurisdiction, and are not wholly frivolous.

The FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis."  Hall Street Assoc. L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).  To determine whether it has jurisdiction to hear a Section 4 petition, a court must "look through" the petition to the underlying claims.  Vaden v. Discover Bank, 556 U.S. 49, 62 (2009) ("A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law . . . .").  Plaintiffs' Sherman Act claims arise under federal law.

Intuit argues that the Court nonetheless lacks subject matter jurisdiction because the Sherman Act claims are frivolous and were added solely for the purpose of obtaining jurisdiction.  Opp'n (dkt. 48) at 16.  A federal claim will not support federal question jurisdiction if it "(1) clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) . . . is wholly insubstantial and frivolous."  Leeson, 671 F.3d at 975 (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)).  Plaintiffs argue this is the wrong legal standard to determine whether there is federal question jurisdiction over a petition to compel arbitration, because only the arbitrator and not the Court may reach the merits of the underlying claims to determine whether they are frivolous.  Reply (dkt. 131) at 4.  In the alternative, Plaintiffs contend their Sherman Act claims are not frivolous.

### 1.    When determining whether there is jurisdiction over a petition for arbitration, a district court has authority to determine whether the underlying claims are frivolous.

Plaintiffs argue the arbitrator, not the Court, must determine whether the claims are frivolous, even when the Court must determine whether it has jurisdiction over the petition to compel arbitration.  Reply at 4.  Plaintiffs argue that at this stage, the Court's only role is to determine whether the underlying dispute involves any federal claims, but that it cannot rule on

4

United States District Court
Northern District of California

the merits of those claims.  Id.  Plaintiffs rely on Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019).  Reply at 4.  But Schein dealt with a different issue.  It considered when a court may reach questions of arbitrability, not the proper method for determining whether jurisdiction exists over a petition to compel arbitration.  Schein, 139 S. Ct. at 528 ("The question then became: Who decides whether the antitrust dispute is subject to arbitration?").  The Supreme Court found that if the arbitration agreement delegates questions of arbitrability to the arbitrator, a court cannot reach those questions and must send them to arbitration, even if the argument that the underlying claims are arbitrable is frivolous.  Id. at 527 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

Plaintiffs also rely on Vaden to argue that the Court must exercise jurisdiction so long as the underlying dispute involves any federal claim.  Reply (dkt. 131) at 5; Vaden, 556 U.S. at 67.  However, Vaden does not establish that courts should ignore normally applicable jurisdictional doctrines and hear any petition to compel arbitration simply because there is some underlying federal claim.  Vaden interpreted the FAA to require "that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it."  Vaden, 556 U.S. at 62 (quoting 9 U.S.C. § 4).  "[A] party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court."  Id. at 66 (quoting 9 U.S.C. § 4).  Therefore, the Court must determine whether the underlying claims could be litigated in federal court, were it not for the arbitration agreement.  Vaden suggests that once it has looked through the arbitration agreement to the underlying claims, a trial court should analyze jurisdiction as it would in any other case.  That analysis requires the court to consider whether the federal law claims are frivolous or were added solely for the purpose of manufacturing jurisdiction.

Plaintiffs offer no justification for their claim that the Court must alter its normal jurisdictional analysis simply because this case involves a petition to compel arbitration.  It is therefore necessary to determine whether the Sherman Act claims "(1) clearly appear[ ] to be

immaterial and made solely for the purpose of obtaining jurisdiction; or (2) [are] wholly insubstantial and frivolous." Leeson, 671 F.3d at 975 (quoting Bell, 327 U.S. at 682–83).

**2.      The Sherman Act claims were not clearly added solely to manufacture jurisdiction.**

Intuit has not established that the Sherman Act claims were clearly added solely for the purpose of manufacturing jurisdiction.

Plaintiffs' last-minute addition of these claims falls far short of the evidence of bad faith that defeated federal jurisdiction in previous cases. In Erum v. County of Kauai, the plaintiff added federal claims to their amended complaint after the original complaint was dismissed for lack of diversity jurisdiction. No. 08-00113 SOM-BMK, 2008 WL 763231, at *3–9 (D. Haw. Mar. 20, 2008), aff'd, 369 F. App'x 843 (9th Cir. 2010). The court found the new federal claims to be "immaterial, insubstantial, and frivolous, and made solely for the purpose of obtaining federal question jurisdiction." Id. at *4. This finding was based on the fact that the plaintiff had lost on similar claims in a state action and had said that it wished to get into federal court by any means possible. Id. Additionally, the court found the federal claims were not colorable. Id. Here, there is no indication that Plaintiffs have made similarly incriminating statements and, as discussed below, at least some of their federal claims are colorable.

The case law cited from other circuits is also not convincing. Opp'n (dkt. 48) at 17. In Williams, the court dismissed the case because the plaintiff "all but conceded that he lacked a good faith basis" for bringing the federal claims. Williams v. Aztar Ind. Gaming Corp., 351 F.3d 294, 300 (7th Cir. 2003). The court also found the federal claims to be frivolous. Id. ("We are unpersuaded by his rhetoric and do not find this to be a 'nonfrivolous argument for the extension [or] modification . . . of existing law or the establishment of new law.'") (quoting Fed. R. Civ. P. 11(b)(2)). And in Pellico, the court granted a motion to stay under the Colorado River doctrine. Pellico v. Mork, No. 14 C 0226, 2014 WL 4948124, at *5 (N.D. Ill. Oct. 1, 2014). The court did not determine whether the claims were added solely to establish federal jurisdiction, only that the plaintiff's "questionable" actions weighed in favor of a stay. Id.

Here, Plaintiffs' actions do not demonstrate that the Sherman Act claims were added solely to manufacture jurisdiction.  Unlike Erum and Williams, Plaintiffs have not made statements suggesting these claims were added solely to manufacture jurisdiction.  Additionally, the claims in those cases were frivolous, which, as discussed below, the Sherman Act claims are not.  While adding the Sherman Act claims the day the petition to compel was filed is questionable, and supports declining jurisdiction under the Colorado River doctrine, it does not demonstrate that those claims were clearly added solely to manufacture jurisdiction.

### 3.       The Sherman Act claims are not wholly frivolous.

Dismissal for lack of subject-matter jurisdiction despite the presence of federal law claims is "exceptional."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) ("[J]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional . . . .").  It is appropriate only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."  Oneida Indian Nation of N. Y. v. County of Oneida, 414 U.S. 661, 666 (1974); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Federal Constitution or laws.").

Intuit argues the "eleventh-hour" Sherman Act claims are frivolous because they are not cognizable and are unsupported by factual allegations.  Opp'n at 18.  Plaintiffs dispute this, arguing that their "demand has raised, at a minimum, a material and substantial question as to whether Intuit's deceptive conduct has violated antitrust laws."  Reply at 6.  Plaintiffs allege two theories of Sherman Act violations: i) that by deceiving a potential competitor, the IRS, from entering the market, Intuit harmed competition; and ii) that by colluding with its competitors to hide the Free File programs, Intuit engaged in unlawful price fixing.  Postman Decl., Ex. C (dkt. 4-3) at 6–7.

The second theory is not frivolous.[1]  Under the Sherman Act, "[e]very contract,

---

[1]  Because one non-frivolous basis for the Sherman Act claims is enough to establish federal

United States District Court
Northern District of California

1   combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

2   among the several States, or with foreign nations, is . . . illegal." 15 U.S.C. § 1. Plaintiffs allege

3   that by "collectively suppressing the number of free-filers," all members of the Free File Alliance

4   were able to generate greater profits from their paid products. Postman Decl., Ex. C at 7. This

5   theory plausibly alleges a price-fixing agreement. "Under the Sherman Act a combination formed

6   for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price

7   of a commodity in interstate or foreign commerce is illegal per se." Kiefer-Stewart Co. v. Joseph

8   E. Seagram & Sons, Inc., 340 U.S. 211, 213 (1951). By illegally colluding to hide their own Free

9   File programs, Intuit and its competitors were able to inflate prices for their tax preparation

10  services. Notably, this scheme would have benefited from unlawful coordinated action, since if

11  any tax services provider failed to hide the Free File program from consumers, it could have

12  undercut prices for everyone's paid products.

13      Intuit argues this theory is frivolous on three grounds. Opp'n at 20–21. First, Intuit argues

14  that the Free File program is voluntary, and if a company did not want to participate in it, it did not

15  have to. Id. at 20. But as Plaintiffs point out, whether or not the Free File program is voluntary

16  has no bearing on whether an agreement to conceal its existence is illegal price fixing. Reply at 6–

17  7. Even if the tax service providers did not have to join the Free File program in the first place, a

18  later agreement among those who did to inflate prices by hiding the program from consumers

19  could violate the Sherman Act. "Proof that a combination was formed for the purpose of fixing

20  prices and that it caused them to be fixed or contributed to that result is proof of the completion of

21  a price-fixing conspiracy under § 1 of the Act." United States v. Socony-Vacuum Oil Co., 310

22  U.S. 150, 224 (1940).

23      Second, Intuit argues the theory is frivolous because the only fact supporting collusion is

24  that H&R Block joined the Free File program. Opp'n at 20–21. However, Plaintiffs' point out

25  that Intuit incorrectly relies on cases dismissing for failure to state a claim, under Rule 12(b)(6).

26  Reply at 5–6. A claim that fails to meet the pleading requirements of Rule 12(b)(6) is not

27

28  question jurisdiction, it is unnecessary to determine whether Intuit's deceiving the IRS could also
    be a basis for a colorable antitrust claim.

necessarily so frivolous that it cannot support federal question jurisdictions.  See Bell, 327 U.S. at 682 ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").  As discussed above, a federal claim fails to establish federal subject matter jurisdiction only if it is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."  Oneida Indian Nation of N. Y., 414 U.S. at 666; Arbaugh, 546 U.S. at 513. Plaintiffs not only allege that H&R Block joined the Free File program, but also that only "2.4% of taxpayers eligible for the Free File program filed taxes using the program" and that "more than 14 million taxpayers who were eligible for the Free File program paid to use an Alliance member's commercial product instead."  Postman Decl., Ex. C at 7.  Even if these allegations would be insufficient to survive a motion to dismiss for failure to state a claim, they lend Plaintiffs' price-fixing claims enough merit to survive Intuit's jurisdictional challenge.

Third, Intuit argues that even if there was a conspiracy to hide the existence of the Free File program, that conduct would be procompetitive, not anticompetitive, because the Free File marketplace does not allow for competition.  Opp'n at 21.  Intuit argues the commercial market is "highly competitive . . . prices are not fixed and companies compete on product features not available through the IRS Free File program."  Id.  But this assumes there are two separate markets, one for free tax preparation services and one for paid tax preparation services.  It may well be the case that there is only one market for tax preparation services, which encompasses both the Free File program and equivalent paid services.  If that is the case, then agreeing to hide the Free File program from consumers reduced competition in the overall market for tax preparation services.  This possibility means that it is simply too soon to conclude that Plaintiffs' price-fixing theory is "completely devoid of merit."  See Oneida Indian Nation of N. Y., 414 U.S. at 666.  Further, the Supreme Court has recognized that "price-fixing agreements are unlawful per se under the Sherman Act and that no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense." Socony-Vacuum Oil Co., 310 U.S. at 218.  Therefore, even if directing consumers away from the

9

Free File program encouraged competition on product features or price among paid products, that is not a defense to colorable price-fixing allegations.

Plaintiffs have a "colorable" price-fixing argument that is not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." Oneida Indian Nation of N. Y., 414 U.S. at 666; Arbaugh, 546 U.S. at 513. Because the Sherman Act claims were not solely added for the purpose of obtaining jurisdiction and are not frivolous, this Court has subject matter jurisdiction over the petition.

### B.    Colorado River Doctrine

"Under Colorado River, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted). The doctrine applies only when the state and federal actions are "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). When that threshold requirement is satisfied, courts in the Ninth Circuit apply an eight-factor test to determine whether to decline jurisdiction:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 978–79 (9th Cir. 2011). These factors should be applied in a "pragmatic, flexible manner," but "with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 16, 21 (1983). Indeed, it is appropriate to apply the Colorado River doctrine only in "exceptional circumstances." Id. at 19.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Plaintiffs believe the doctrine is wholly inapplicable to a petition to compel arbitration. Reply (dkt. 131) at 17–18.  This argument relies on the Ninth Circuit's admonition that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotation marks and citations omitted).  Plaintiffs reason that "a discretionary abstention doctrine"[2] therefore has no place in this litigation.  Reply at 17–18.

But the Ninth Circuit case Plaintiffs rely on stated only that a district court must compel arbitration if "a valid agreement to arbitrate exists" and "the agreement encompasses the dispute at issue."  <u>Chiron Corp.</u>, 207 F.3d at 1130.  That issue is distinct from the court's authority to apply the <u>Colorado River</u> doctrine or related discretionary abstention doctrines.  Indeed, the phrase "<u>Colorado River</u>" appears nowhere in the Ninth Circuit case Plaintiffs rely on.  <u>See generally</u> <u>id.</u> The other decision Plaintiffs rely on, <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, confirms that the <u>Colorado River</u> doctrine is not categorically inapplicable in litigation brought to compel arbitration.  On the contrary, that decision considered applying the doctrine to a petition to compel arbitration and declined to do so only after applying the <u>Colorado River</u> factors and determining that "exceptional circumstances" did not justify declining jurisdiction.  <u>Moses H. Cone</u>, 460 U.S. at 7, 19.

Plaintiffs are incorrect that the <u>Colorado River</u> doctrine is inapplicable to an action seeking to compel arbitration under the FAA.  The rest of this section analyzes whether this litigation is "substantially similar" to the California case and, concluding that it is, applies the Ninth Circuit's eight-factor test to determine whether declining jurisdiction is appropriate.

        **1.**        **Substantially similar.**

"Proceedings are substantially similar when substantially the same parties are contemporaneously litigating substantially the same issues in another forum."  <u>Goodin v. Vendley</u>,

---

[2]  The <u>Colorado River</u> doctrine is not, in fact, a form of abstention, but rather an exercise "of deference to state court jurisdiction."  <u>Coopers & Lybrand v. Sun-Diamond Growers of CA</u>, 912 F.2d 1135, 1137 (9th Cir. 1990).

356 F. Supp. 3d 935, 944 (N.D. Cal. 2018) (internal alterations and quotation marks omitted).

"Exact parallelism is not required." Scottsdale Ins. Co. v. Parmerlee, No. 19-mc-80298-JSC, 2020

WL 1332146, at *4 (N.D. Cal. Mar. 23, 2020) (internal alterations and quotation marks omitted).

Plaintiffs do not dispute that this case and the state court action are substantially similar,

see Reply at 17–20, nor could they. The state court action demands a declaration that certain

claims are not subject to arbitration. This action seeks a holding that those same claims are subject

to arbitration. The two cases therefore raise "substantially the same issues." Goodin, 356 F. Supp.

3d at 944; see also Parmerlee, 2020 WL 1332146, at *4 (motion to vacate arbitration award raised

substantially the same issues as motion to confirm the same award). And the parties to this case

are Intuit (the state court plaintiff) and a subset of the state court defendants, so there is substantial

similarity vis a vis the parties as well. See Opp'n at 23.

### 2.      Jurisdiction over the property at stake.

There is no property at stake in this action. This factor is therefore irrelevant and may be

discounted for purposes of the Colorado River analysis. See R.R. St. & Co. Inc., 656 F.3d at 979.

### 3.      Inconvenience of the federal forum.

The state court action was filed in Los Angeles Superior Court. Plaintiffs argue that forum

is less convenient than this one, since Intuit's headquarters are in the Northern District of

California and "the overwhelming majority of [Plaintiffs] have no relationship" to Los Angeles.

Reply at 19–20. Intuit has no real response, it simply asserts that "convenience is not a factor."

Opp'n at 23. This factor weighs against declining jurisdiction.

### 4.      Piecemeal litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby

duplicating efforts and possibly reaching different results." R.R. St. & Co. Inc., 656 F.3d at 979

(internal quotation marks and citations omitted). The "mere possibility" of piecemeal litigation

does not justify applying the Colorado River doctrine. Id. The fact that this suit and the state

court action involve identical issues suggests there is a risk of duplicative effort and conflicting

results. See Parmerlee, 2020 WL 1332146, at *5 ("[I]f the Court retains jurisdiction over

United States District Court
Northern District of California

1  Respondents' vacatur motion then both courts will address the same issue—whether the

2  arbitration award should be confirmed—independently.  Thus, there is not a 'mere possibility' of

3  piecemeal litigation, but a significant risk of duplication of effort.").

4  However, Plaintiffs have moved for a stay of the state court proceedings pending this

5  Court's resolution of the motion to compel arbitration.  Reply at 19.  California law requires that

6  that stay be granted, and that the state proceedings also be stayed pending arbitration, if this Court

7  grants Plaintiffs' motion.  Cal. Civ. Proc. Code § 1281.4.  So if this Court orders arbitration, the

8  California proceeding will be stayed for the duration of the arbitration, reducing inefficient

9  duplicative efforts.  But if this Court does not order arbitration, the stay will be lifted in the

10  California case, and the state court will have to decide the same issues already considered here,

11  leading to wasted judicial effort and possibly conflicting results.  And in any event, only a subset

12  of the state defendants are Plaintiffs in this action, Opp'n at 24, so some cases will have to be

13  litigated in California court regardless of what happens here.  There is therefore more than a "mere

14  possibility" of duplicative effort.

15  It is also true that the Supreme Court has downplayed the significance of this factor in the

16  context of a motion to compel arbitration.  But that case is distinguishable.  In Moses H. Cone, the

17  Court held that the possibility of two proceedings, one in arbitration to resolve arbitrable claims

18  and one in state court to resolve non-arbitrable claims, did not implicate the Colorado River

19  doctrine's concern about piecemeal litigation.  460 U.S. at 19–21.  This was because the risk of

20  proceedings in two separate forums was the result of the parties' arbitration agreement, not

21  simultaneous litigation in state and federal court.  Id. ("That misfortune . . . is not the result of any

22  choice between federal and state courts; it occurs because the relevant federal law requires

23  piecemeal resolution when necessary to give effect to an arbitration agreement.").  "Hence, a

24  decision to allow that issue to be decided in federal rather than state court does not cause

25  piecemeal resolution of the parties' underlying disputes." Id.

26  That is not the case here.  In this case, the risk of duplicative litigation and contradictory

27  outcomes arises from the possibility that both this Court and the Los Angeles Superior Court will

28  decide the same issues of arbitrability—not the possibility that some aspects of the underlying

dispute will be resolved in front of the arbitrator and others before a California court.  The risk of piecemeal litigation weighs in favor of declining jurisdiction.

### 5.    Order in which the forums obtained jurisdiction.

The California action was filed first, but that is not dispositive.  "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Moses H. Cone, 460 U.S. at 21.  By that metric, this Court appears to enjoy priority.  The California action has not even been assigned a judge.  Reply at 19.  In contrast, the federal action has a judge and a fully briefed motion to compel arbitration.  See Order Reassigning Case (dkt. 10); Mot.; Opp'n; Reply.  This factor weighs against declining jurisdiction.

### 6.    Rule of decision.

The Agreement is to be interpreted pursuant to California law, so state law provides the most important rule of decision.  See Petition Ex. B (dkt. 1-2) ¶ 13.  True, the FAA, a federal statute, is also relevant.  But other courts in this district have held that this does not militate in favor of federal jurisdiction, since federal and state courts have concurrent jurisdiction to enforce the FAA.  Parmerlee, 2020 WL 1332146, at *5.  This factor weighs in favor of applying the Colorado River doctrine.

### 7.    Adequacy of the state court proceedings to protect the rights of the parties.

The state court proceedings can protect the rights Plaintiffs seek to preserve via this action.  Intuit's state action seeks a declaration that certain claims are not arbitrable.  Plaintiffs brought this action to prevent such a declaration.  The Los Angeles Superior Court can protect Plaintiffs' ostensible right to arbitration by ruling against Intuit.  This factor weighs in favor of declining jurisdiction.

### 8.    Forum shopping.

It appears Plaintiffs have engaged in forum shopping.  They filed this action in federal court even though they could have asserted the same arguments to defend Intuit's action in state

court.  See infra Section III.B.7.  And they added federal causes of action to their arbitration demands just hours before filing this action.  Mot. at 25.  That suggests their goal was to have the arbitrability issues decided by this Court rather than an equally capable California court.  This apparent forum shopping weighs in favor of declining jurisdiction.

### 9.    Adequacy of the state court proceedings to resolve all the issues before this Court.

The state court proceedings will resolve every issue presented by this case.  As explained above, the same issues raised here are implicated there.

### 10.    Overall analysis.

This is the unusual case where it is appropriate to decline jurisdiction under the Colorado River doctrine.  This case presents serious concerns about piecemeal litigation leading to wasted judicial resources and forum shopping.  On the other hand, the Los Angeles Superior Court is both competent and capable of resolving the issues presented here in their entirety.  Plaintiffs may well be correct that their claims are arbitrable, or that that question must itself be decided by the arbitrator, but there is no reason that the state court cannot say so.  In contrast, this Court can resolve these issues for only a subset of the parties to the state court litigation.

Weighed against these concerns are the relative convenience of this Court as a forum and the fact that litigation has advanced further here than in state court.  These considerations do not necessitate a different outcome.  Since Intuit is domiciled in this district, it appears it is the party most impacted by the ostensible inconvenience of a Los Angeles forum.  But Intuit itself filed in Los Angeles.  Apparently very few Plaintiffs are domiciled in Los Angeles, but at least some of them do have a relationship with that forum, and it is not clear how many are domiciled in this district.  Reply at 20.  Finally, Los Angeles is not particularly remote from San Francisco.  As to priority, the proceedings may be more advanced in this Court, but they are not particularly developed.  So far, this Court has not made any substantive rulings on this case.  In fact, the only analysis necessary is contained in this Order.  Any wasted work that might result from declining to exercise jurisdiction is outweighed by the threat of redundant proceedings in this Court and the

1    Los Angeles Superior Court.

2        **C.    Refusal to Arbitrate**

3        In the alternative, the petition must be dismissed because Intuit has not refused to arbitrate.

4    Suing for a declaration of its rights in state court is consistent with the terms of the Agreement,

5    and Intuit has otherwise fulfilled its obligations under those terms.

6        Section 4 of the FAA permits a "party aggrieved by the alleged . . . refusal of another to

7    arbitrate under a written agreement for arbitration [to] petition" a federal court to compel

8    arbitration.  9 U.S.C. § 4.  "Refusal to arbitrate" is an "indispensable element" of a petition to

9    compel arbitration.  Moses H. Cone, 460 U.S. at 21.  "[F]ederal policy" requires that "private

10   agreements to arbitrate [be] enforced according to their terms."  Volt, 489 U.S. at 479.  Because

11   courts must enforce the arbitration agreement, not simply require arbitration as a matter of course,

12   a court may only compel arbitration if one party is not abiding by the terms of the agreement.  See

13   Lifescan, Inc. v. Premier Diabetic Servs., 363 F.3d 1010, 1012 (9th Cir. 2004) ("By its terms,

14   section 4 of the FAA limits the court's discretion; the court must order the parties to proceed to

15   arbitration only in accordance with the terms of their agreement.").

16       The crucial question is whether Intuit's state court lawsuit constitutes a refusal to arbitrate.

17   Intuit argues that its suit is specifically allowed by the Agreement, and therefore cannot constitute

18   a refusal to arbitrate.  Opp'n at 11.  Plaintiffs argue that by asking the state court to decide

19   interpretative issues reserved to the arbitrator, Intuit has refused to arbitrate.  Reply at 16.

20       **1.    Intuit is acting in accordance with the terms of the arbitration**
21           **agreement.**

22       Intuit's state court lawsuit does not constitute refusal to arbitrate, because it is allowed

23   under the terms of the Agreement.  Section 14 of the Agreement states that:

24
25           Any dispute or claim relating in any way to the services or this
            agreement will be resolved by binding arbitration, rather than in court,
26           except that you may assert claims in small claims court if your claims
            qualify. . . . Notwithstanding anything to the contrary, any party to the
27           arbitration may at any time seek injunctions or other forms of
            equitable relief from any court of competent jurisdiction.

28   Postman Decl., Ex. B (dkt. 4-2) at 3.  The Ninth Circuit recently interpreted this language to allow

United States District Court
Northern District of California

courts to "issue equitable relief in aid of arbitration, [but] not determine the merits of an arbitrable dispute." Dohrmann v. Intuit, Inc., No. 20-15466, 2020 WL 4601254, at *2 (9th Cir. Aug. 11, 2020). Therefore, Intuit's state court suit is allowed under the Agreement if it was brought "in aid of arbitration."

The state court suit was brought "in aid of arbitration," because it seeks declaratory relief that will guide the arbitration proceedings, not a decision on the merits of Plaintiffs' claims. Plaintiffs argue Intuit is "ignor[ing] AAA's determinations" by filing the state court suit, and thus, the state suit cannot be "in aid of arbitration." Petition (dkt. 3) at 12. However, Intuit is asking the state court to declare their rights under the Agreement, because it believes the arbitrator's refusal to send Plaintiffs' claims to small claims court violates the Agreement's terms. Postman Decl., Ex. E (dkt. 4-5) at 7–10. This declaration will aid the arbitration, because the state court will provide interpretative guidance regarding how the arbitration should proceed. The fact that the AAA has agreed to comply with any future state court order supports this conclusion. Postman Decl., Ex. D (dkt. 7-1) at D-35.

Intuit's request is similar to that of the Defendant in Kim v. Colorall Techs., Inc., No. C-00-1959-VRW, 2000 WL 1262667 (N.D. Cal. Aug. 18, 2000). The Defendant in Kim asked the district court for aid in interpreting the arbitration agreement, because they believed arbitration should take place in Florida, not California. Id. at *1. The court held that disputing the proper location of the arbitration was not a refusal to arbitrate. Id. at *2. Similarly here, Intuit is asking the state court to provide interpretative aid regarding how the arbitration should proceed.

While its goal is ultimately to move the dispute into small claims court, Intuit has not yet refused to arbitrate. It has paid all arbitration fees, has not withdrawn from the arbitration, and has so far complied with all AAA rules and orders. Cf. Allemeier v. Zyppah, Inc., No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *4 (C.D. Cal. Sep. 21, 2018) (holding that by "repeatedly refusing to pay its portion of the filing fee," among other acts, the defendant "failed or refused to

arbitrate"). If Intuit ultimately succeeds in having Plaintiffs' claims moved to small claims court, that will simply be another step in the arbitral process.

## IV.    CONCLUSION

For the foregoing reasons, the petition to compel arbitration is dismissed.

**IT IS SO ORDERED.**

Dated: September 10, 2020



CHARLES R. BREYER
United States District Judge